[No. 22773. Department Two. April 21, 1931.]

T. F. McMILLEN et al., Respondents, v. ELLIS BANCROFT et al., Appellants.[1]

F. W. Mansfield and W. P. Bell, for appellants.

S. M. Bruce and Robert Mulvihill, for respondents.

[1] Reported in 298 Pac. 460.

MILLARD, J.—Plaintiffs seek by this action to recover two thousand dollars paid to defendants on a certain contract, and to recover damages claimed to have resulted from defendants' fraudulent representations, which, it is alleged, induced the plaintiffs to enter into the contract with the defendants. The cause was tried to the court, which found that defendants made no false representations inducing the execution of the contract; that the plaintiffs were entitled to recover two thousand dollars, paid by them on the contract, less the value of the timber removed by the plaintiffs at the price specified in the contract; that the plaintiffs abandoned the contract, and that the defendants acquiesced in that abandonment and subsequently disposed of the remaining property to third persons. Judgment was entered accordingly. The defendants have appealed.

On November 24, 1925, the parties herein entered into a written contract reading as follows:

"THIS AGREEMENT, entered into this twenty-fourth day of November Nineteen Hundred and Twenty-five:

"WITNESSETH: That Ellis Bancroft and Chas. W. Miley, parties of the first part, agree to sell to T. F. McMillan and Paul Barnum, parties of the second part; and parties of the second part agree to purchase from parties of the first part all of the timber now remaining on the East ½ and of the NW ¼ and SW¼ of the SW¼, Sec. 10, Twp. 27 N. Range 2 W. now owned by the parties of the first part together with two sets of disconnected R. R. Logging Trucks and all of the boom sticks and chains now owned by the parties of the first part and now being in Quilcene Bay, there being forty-five (45) or more of these boom sticks; also all of the timber now held under contract by the parties of the first part and owned by the Washington Lumber and Spar Co., of Seattle, Washington located in Sec. 10 and 15, Twp. 27 N. R. 2 W, all in Jefferson County, Washington, on the following terms:

"The parties of the second part agree to pay to the parties of the first part Two Thousand ($2000) Dol-

lars cash and Two Thousand ($2000) Dollars to be paid at the rate of One (.01) Cent per foot on all piling, and one ($1.00) Dollar per M, F. B. M. on all logs removed in addition to the regular stumpage price to be paid by the parties of the second part which shall be three $3.00 Dollars per M. for all timber and Three (.03) cents per foot for all piling 100 feet long or longer; and two and one-half (.02½) Cents per foot for all piling and cedar poles under one hundred (100) feet in length removed by parties of the second part, until the two Thousand ($2000) Dollars with interest at the rate of seven (7%) per cent shall be paid, the said Two Thousand ($2000) Dollars being a deposit on stumpage which shall apply at the completion of said agreement when the regular stumpage rate will be in force, said stumpage to be paid as piling and logs are disposed of.

"It is agreed that the parties of the second part shall furnish to the parties of the first part duplicate scale sheets of all timber, piling and poles removed; that the timber owned by the parties of the first part and that owned by the Washington Lumber and Spar Co. shall be kept separate; and that the parties of the second part shall take everything clean that will make either logs or piling.

"The parties of the second part also agree to pay all taxes that shall become due and assessed against the timber owned by the parties of the first part, after the date of this instrument, taxes on land not included.

"The taxes on timber owned by the Washington Lumber and Spar Co., which shall become due after January 1, 1927, shall be paid by these parties of the second part.

"It is further agreed that the parties of the second part shall have four years from the date of this instrument in which to remove said timber; and they shall also have the use of all rights-of-way now held by the parties of the first part for the removal of said timber by paying the yearly rental of thirty ($30) Dollars."

Coincident with the execution of the contract, the respondents paid to the appellants five hundred dol-

lars, and thereafter paid fifteen hundred dollars additional. Respondents took possession of the premises, erected a logging camp, and proceeded to log the land. The timber removed consisted of poles, piling and logs. In January, 1927, the respondents ceased logging operations on the land, as they were not permitted to transport their logs over the county roads, and they had no other method of removing the timber from the land. In the spring of 1927, the appellants sold the remaining timber, poles and piles on the land to other parties, who removed the timber.

Appellants contend that the two thousand dollars paid by respondents was for the purchase of the trucks, boom sticks, and chains referred to in the contract; that the amount paid was solely for the purchase of the personal property mentioned. It clearly appears from the evidence that the logging trucks, chains, etc., were never in the actual possession of the respondents. That property was in the possession of third parties, to whom it had been committed by appellant Bancroft. The third parties were never informed that appellant Bancroft had parted with the ownership of that property.

While upon the land, the respondents removed therefrom timber of the approximate value of four hundred dollars. In rendering judgment requiring the return of the two thousand dollars to the respondents, the appellants were credited with that amount.

We concur in the view of the trial court expressed as follows:

"As I construe this action, as it now stands on the evidence, there has been, in effect, a mutual abandonment of this contract. In other words, the plaintiffs quit—moved out. The defendants took over everything there and now claim no damages except ask for the value of the timber removed. This two thousand · dollars was paid not for anything in particular, but,

as I read it, it was to be credited on the stumpage at some time. Now, I am going to find that this contract was, in effect, breached by the plaintiffs, acquiesced in by the defendants. Everything the defendants sold, except the timber taken out, was taken back by the defendants to be resold by them, whether at a profit or loss we are not informed. I am going to enter judgment for plaintiffs for two thousand dollars, less the value of this timber taken out under the contract price.

"I am convinced that that is a proper conclusion of law to be drawn from the evidence and testimony in this case. If the defendants were counter-claiming for the breach of the contract, seeking damages, he would be entitled to recover, but he has not done that. He admits he has taken back everything. He has resold it, and whether he has made a profit or loss by the breach is no evidence, and he got two thousand dollars which it was not claimed was to be forfeited in the event of a breach of the contract, but you simply acquiesced in the plaintiffs' moving out of there."

If, as contended by the appellants, the two thousand dollars was paid for the trucks, boom sticks, and chains, the resumption of possession of that property by appellants, who sold same to third parties, operated as a complete rescission of the contract. Appellants did not contend in the trial court, nor do they now insist, that they sold the property on account of respondents. Accepting appellants' view, this is simply a case of a purchaser abandoning his contract of purchase and the seller taking possession of the property sold, a resale, and the proceeds pocketed by the seller. That is, the respondents abandoned the property they had bought from the appellants, who thereupon took possession of the property and sold it. It is no different in principle than where goods delivered to a purchaser under a contract of sale are returned to the seller, who accepts redelivery and sells the property.

"When goods have been delivered to the buyer under a contract of sale, and he returns them to the seller, and the latter accepts the redelivery, and resumes and retains possession of the property as his own, and does not notify the buyer that he intends to hold it subject to his order to sell it for his account, the transaction operates as a complete rescission of the contract of sale." 2 Black on Rescission and Cancellation (2d ed.), p. 1304, § 531.

The resumption of possession of the property, and the sale thereof by the appellants, were acts inconsistent with their contention that they did not acquiesce in the abandonment of the contract by the respondents.

"A contract will be treated as abandoned where the acts of one party inconsistent with its existence are acquiesced in by the other." 13 C. J., p. 601, § 624.

The mutual abandonment or mutual rescission of the contract in March, 1927, constituted a new contract. By virtue of such mutual rescission the parties are entitled to restoration to their original rights. *Croup v. Humboldt Quartz & Placer Min. Co.*, 87 Wash. 248, 151 Pac. 493.

"When a contract has been rescinded by mutual consent, the parties are as a general rule restored to their original rights with relation to the subject matter, . . ." 13 C. J., p. 602, § 627.

That the respondents were entitled, as was adjudged, to the return of the purchase price of two thousand dollars, minus the value of the timber removed by them from the appellants' land, is the logical implication from the new contract.

Appellants contend that the action is barred by the statute of limitations.

This action is not barred, as it was instituted in December, 1929, thirty-three months after the mutual abandonment of the contract in March, 1927, when the cause of action accrued. The statute prescribes that

such actions shall be commenced within three years after the cause of action shall have accrued.

"3. An action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument; . . ." Rem. Comp. Stat., § 159.

The judgment is affirmed.

TOLMAN, C. J., BEELER, FULLERTON, and BEALS, JJ., concur.