[No. 29222. Department One. June 26, 1944.]

JOHN L. WIEGARDT et al., Appellants, v. ALFRED E. BECKEN et al., Respondents.[1]

*Fred M. Bond* and *W. H. Abel,* for appellants.

*L. B. Donley,* for respondents.

JEFFERS, J.—In August, 1939, John L. Wiegardt and wife, G. A. Wiegardt and wife, and Fred W. Wiegardt and wife, doing business as Wiegardt Brothers, brought an action in the superior court for Pacific county against Alfred Becken and wife, for an accounting covering a period from the

[1]Reported in 149 P. (2d) 929.

time of the execution of a certain agreement dated September 3, 1935, up to the time the action was instituted. The action was tried by the court, and resulted in a judgment dismissing plaintiffs' action.

The judgment was entered on the merits after quite a lengthy trial. The theory upon which the trial court dismissed the complaint was that Becken's operations under the contract above referred to (and which will be hereinafter set out in full) had not resulted in a profit, and that, as Becken had paid plaintiffs all advancements made by them, and had paid all accounts for which plaintiffs were primarily liable, plaintiffs were entitled to nothing under their complaint.

Plaintiffs appealed from the judgment entered and this court affirmed the judgment of the lower court, not, however, on the merits, but for the reason that plaintiffs' complaint did not state a cause of action, it appearing that plaintiffs had not alleged a demand for an accounting and a refusal by Becken to comply with such demand. See *Wiegardt v. Becken,* 8 Wn. (2d) 568, 113 P. (2d) 60.

The trial court dismissed the action with prejudice. The effect of the decision of this court, in affirming the judgment of the lower court because the complaint did not state a cause of action, was to leave the parties as they were prior to the bringing of that action. This matter being called to the attention of this court in a petition for rehearing, the case was heard *En Banc,* and thereafter the case was remanded, with instructions to the trial court to dismiss the action without prejudice. *Wiegardt v. Becken,* 10 Wn. (2d) 725, 118 P. (2d) 182.

After the remittitur went down, and on February 11, 1942, Weigardt Brothers commenced the present action against Becken and wife, in Grays Harbor county, in which plaintiffs asked for an accounting by Becken of all his operations had pursuant to the written agreement made and entered into by and between the parties hereto on September 3, 1935, which contract provides:

"This agreement entered into this third day of September, nineteen hundred thirty five, between A. E. Becken, here-

after known as the party of the first part, and Wiegardt Brothers, hereafter known as the party of the second part. For the purpose of providing working capital, obtaining trade discounts, and providing credit connections, Wiegardt Brothers agree to order, be billed, and pay for such equipment for the fishermen, and for the party of the first part, as may be necessary to put the traps in operation, and carry on current operations; also for equipment ordered directly by A. E. Becken, provided that party of the second part first approve such transactions. Party of the first part may also borrow certain equipment from Wiegardt Brothers, he agreeing to return such in as good a shape as when taken.

"That party of the second part be reimbursed for advancements made, party of the first part agrees to withhold one half of the earnings of each fisherman to whom advances have been made, until such liens be satisfied in full. Party of the first part to keep complete records of fish turned in, sums paid, equipment supplied, and other operating expenses, same to be available to Wiegardt Brothers. Wiegardt Brothers agree to keep records of sums advanced, supplies purchased or loaned to fishermen or A. E. Becken, same to be available to party of second part at all times.

"Business to be conducted in the name of A. E. Becken.

"A salary to the party of the first part shall depend entirely upon earnings, above all expenses. For the purpose of this agreement expenses shall be construed to mean all supplies advanced to fishermen or party of the first part, for which no agreement to return same has not been previously made, or sufficient funds have not been withheld or paid over to satisfy such liens. Also gas and oil used by the party of the first part in the pursuit of business, a reasonable wage to any other help necessary, and mileage on truck at the rate of six and one half cents per mile. Any profits above these figures to the amount of one hundred dollars for each months operations shall go to the party of the first part as salary. All sums above that to be divided equally between A. E. Becken and Wiegardt Brothers.

"This agreement shall be binding on both parties for a period of..................months. By mutual agreement time may be extended."

The complaint in the present action alleged, among other things, that a demand had been made upon Becken for an accounting, and such demand refused.

Defendants, by their answer, admit certain formal alle-

gations of the complaint, admit the execution of the above agreement, admit that certain advances were made by plaintiffs and certain credit connections provided, pursuant to which certain supplies were furnished Becken for the purpose of carrying on the business contemplated by the agreement. Defendants deny that they are liable to plaintiffs in any manner or for any amount under the contract, and allege affirmatively that the contract was abandoned by mutual consent of the parties on or about December 31, 1936, since which time plaintiffs have done nothing toward carrying out what the parties hereto assume, and which we shall assume, was a joint venture.

It appearing at the beginning of the trial that the parties were not in accord as to the length of time the relationship created by the contract existed, it was agreed in open court that, before any testimony would be introduced relative to the accounting feature of the case, they would first proceed to get a determination of the length of time the relationship under the contract continued, and whether or not such relationship had been terminated as claimed by defendants and all rights and liabilities under the contract abandoned.

The trial court proceeded to hear the case on this theory, and, after testimony taken, many exhibits introduced, and before evidence taken on the accounting feature, other than some testimony that came· in to support the contentions of the parties on the questions before the court, defendants moved for a trial amendment to make the pleadings conform to the proof, as follows:

"That the parties hereto operated under and in accordance with the terms of the written agreement set forth in paragraph V of the complaint herein up to and about June 5, 1936, and that on said date defendants were advised by plaintiffs that they desired to terminate said arrangement and were not satisfied with the same, and that in answer thereto and within a few days thereafter the defendants advised the plaintiffs that if plaintiffs were dissatisfied that they, the defendants, would pay to the plaintiffs all sums advanced by them in the course of such business arrangement and that the plaintiffs impliedly agreed to the same

and that thereafter and on or about December 5, 1936, and under and in pursuant to the terms and conditions of said understanding and agreement of the parties the defendants herein did repay to the plaintiffs all sums advanced by the said plaintiffs and that payment thereof was a complete accord and satisfaction and that it was accepted by the plaintiffs as such, and that the plaintiffs at no time after June 5, 1936, contributed anything toward said business enterprise and that the plaintiffs herein carried on the same at their own expense, and that from and after June 5, 1936, it was necessary to carry on current operations that substantial sums of money be advanced and that substantial credit be obtained and that shortly after June 5, 1936, the defendants herein refused to extend further credit or to make further credit arrangements for plaintiffs and advised the parties with whom credit arrangements had been made that they, the plaintiffs, would not be held responsible for further credit advances and that no further credit arrangements were furnished to defendants by plaintiffs."

Counsel for defendants then moved for a dismissal of the case, on the ground that the evidence affirmatively showed that the contract was terminated and abandoned by the parties by their implied and actual agreement, and that it was abandoned upon the terms that the Wiegardts be repaid the money advanced and the accounts for which Wiegardts were primarily liable be settled; that there is no reason for an accounting, because of the mutual abandonment of the contract.

The trial court granted defendants' motion, and on July 23, 1943, entered a judgment denying to plaintiffs an accounting and dismissing plaintiffs' action. The theory of the trial court is shown by a statement found in the decree, following a copy of the contract, as follows:

"And it appearing thereafter and pursuant to the terms and conditions of said agreement operations were carried on and the said plaintiffs did furnish certain moneys, credit, credit connections and that the defendants carried on a fish buying and selling business on and pursuant to the terms and conditions of said contract until on or about June 5, 1936, at which time the plaintiffs expressed dissatisfaction with said contract and shortly thereafter the defendant proposed that the said contractual arrangement be terminated

and closed, and that the said defendant, Alfred E. Becken would thereafter repay any and all advances made and obligations incurred by the plaintiffs pursuant to said contract, and that from and after on or about June 5, 1936, the said contract was terminated and abandoned by each and all of the parties thereto, and that nothing further was done pursuant to said contract after said date, and that thereafter and in the month of December of 1936, the said defendant, Alfred E. Becken, paid to the plaintiffs all advances made and all obligations incurred by the said plaintiffs, and that said transaction was and constituted an accord and satisfaction between the parties and that thereby any and all obligations under the said contract and each and all of the parties hereto terminated and came to an end, and that neither of the parties to the said contract have any rights, obligations or liabilities each to the other."

Plaintiffs timely filed a motion for new trial, which was denied, and this appeal followed.

Appellants made the following assignments of error: (1) It was error, and against the weight of evidence, to find, decide, and decree that the joint venture was terminated from and after June 5, 1936; (2) it was error to find, decide, and decree, and was against the weight of the evidence to decree, that appellants had waived, abandoned, or terminated their right to an accounting respecting the joint venture; (3) it was error to find, decide, and decree that payments by Becken in December, 1936, of the balance of advances made by appellants constituted an accord and satisfaction between the parties, and that thereby any and all obligations under the contract and the rights of each and all of the parties thereto terminated and came to an end.

It will be assumed that the relationship of the parties under the contract was that of joint adventurers.

■ It may be admitted that it is implicit in the nature of a joint adventure that there must be some sort of an accounting between the parties by which their respective interests and liabilities may be determined. 30 Am. Jur., p. 704, § 50. It is, however, within the powers of the parties to a joint adventure to agree upon their own terms as to charges and credits to be made and allowed upon the settlement of the accounts. 30 Am. Jur. 704, § 51.

It is appellants' contention that the parties had no understanding in June or December, 1936, or at any other time, that the business be terminated, or an accounting or the right to an accounting waived, and that the payment made by Becken on December 5, 1936, was made in pursuance of the original agreement and not in termination thereof. On the other hand, it is respondents' contention that from and after June 5, 1936, all parties treated the contract as having been rescinded, and that the only thing remaining to be done was for respondents to pay appellants for advances made and any balance that was then due on accounts for supplies furnished Becken by the Oregon Marine Supply Company of Portland and the F. G. Foster Company of Hoquiam.

It is undisputed that on December 5, 1936, Becken gave to appellants a check for $1,829.44, which was the amount Dewey Dee, bookkeeper for appellants, had told him was still due from Becken for advancements made and supplies furnished through the two firms above mentioned. The advancements made by appellants to this enterprise and the supplies furnished by them through the above mentioned firms, together with payments made by Becken during the years 1935 and 1936, are shown by plaintiffs' exhibit 9, introduced herein. This exhibit shows that the account, in so far as appellants' advancements and supplies furnished were concerned, was balanced for the years 1935 and 1936 by the payment by Becken of the $1,829.44.

It is the further contention of respondents that from and after December 5, 1936, appellants never in any manner claimed to have any interest in Becken's operations at Taholah, nor did they make any demand for an accounting, nor in any way suggest that all rights and liabilities under the contract had not been terminated, until they instituted the first action in August, 1939.

The differences existing between these parties are before this court for the third time. They have been submitted to two different trial judges. It may be admitted that the issues, as framed, were different in the two cases, but many

of the witnesses were the same, and many of the exhibits introduced were the same in both cases. The trial court in the first case, after a hearing on the merits, which included an accounting up to December 31, 1937, decided appellants were not entitled to recover. The trial court in the present case concluded appellants were not entitled to recover, for the reasons hereinabove shown. While many facts appearing in the testimony are not in dispute, some which bear particularly on the question of the termination of the contract are in dispute, and must have been resolved by the trial court in favor of respondents.

While we are not absolutely bound by the findings of the trial court in cases of this character, certainly great weight should be given to them.

The question to be decided is a factual one, and resolves itself down to the question of whether or not it was sufficiently established by the evidence that all the parties to the contract impliedly or expressly agreed that the contract was terminated on or about June 5, 1936, except that Becken was to pay appellants the amounts hereinbefore referred to, and that on or about June 5, 1936, all rights and liabilities of each and all of the parties thereto ceased, except for the payment to be made by Becken.

Before discussing the question presented, it might be well to give a brief history of the parties to this action and their prior activities.

Appellants were principally engaged in the business of canning clams and oysters, and had dealt to a limited extent in salmon eggs. They had known Becken for fifteen or twenty years prior to the making of the agreement herein involved. Becken had worked for appellants at various times for eight or nine years, and was an experienced fish man.

Becken is of Indian blood, and was familiar with fishing operations as carried on in the Quinault reservation, where he was to operate under this contract. Becken being an Indian, it was undoubtedly the thought of all the parties that he would have some advantage in buying fish on the reservation, where all the fishing is done and all the fish are

bought from Indians. Becken was to operate at Taholah, which is on the reservation, and he accordingly procured a permit to purchase fish, and proceeded to Taholah, taking with him such equipment as he had, and began operations under the contract.

It is undisputed, as we understand the record, that all the cash appellants put into the venture was five hundred dollars deposited to Becken's credit in an Aberdeen bank on October 11, 1935, two hundred dollars on March 19, 1936, and two hundred dollars on April 2, 1936. About the time the operations were started, appellants also endorsed Becken's note for eight hundred dollars. Becken put in some cash, and, as we have said, some equipment. Apparently, in order to carry on such a fish buying operation, considerable cash is required, as the Indian fishermen demand their pay for the fish sold by them each day, while the buyer may have to wait for some time before he gets his money from fish sold by him. It also seems to be the practice to furnish the Indian fishermen with such equipment as they need on credit, trusting very largely on the fact that, when and as fish are sold by the Indians, the pay for equipment furnished them will be deducted from what is due them for fish sold.

Realizing this situation, appellants established credit connections for Becken with the Oregon Marine Supply Company of Portland and the F. G. Foster Company of Hoquiam, who deal in such supplies as are needed for the fishing business. During 1935 and 1936, supplies were obtained from the above companies, at Becken's request and on appellants' credit. While appellants were primarily liable to those companies for supplies furnished Becken, and recognized such liability, as appears from letters introduced herein, it seems to appear without dispute that the supplies furnished were not paid for by appellants until Becken had remitted to them the money with which to take care of such bills. It also appears that these accounts were sometimes overdue, and then appellants would ask that additional time be given until they could get a remittance from Becken.

The parties proceeded to operate pursuant to the contract until June 2, 1936, during which time the letters introduced indicate that the most friendly feeling existed between the parties. On the date last mentioned, John Wiegardt, who was the office man of the firm and the man with whom Becken had most of his dealings, wrote Becken a letter which states:

"Dear Alfred:

"Your letter of June 1st is at hand. From the tone of your letter, I gather that you will not have the necessary money to pay off the Oregon Marine Supply Co., and F. G. Foster & Co. by June 10th. According to the agreement we have with these concerns, June 10th is the deadline date for the 10% discount. I must ask that you turn in as much money as you can to us that we may get your check, that is the amount of your check, to the Oregon Marine Supply Co. In the meantime will you kindly write them a nice letter informing them of the lateness of salmon run which will account for our being slow in paying for the netting, and that it will be greatly appreciated if they will extend the discount date to July 1st. I think you had better do the same with F. G. Foster Co.

"I notice from your letter that the usual run of buyers are in Taholah again this year. When you first approached us to back you, you gave us the understanding that you would just about have a monopoly on fish buying on the reservation because all other buyers were going to have their trading licenses revoked. It certainly looks like the other buyers did not lose their licenses.

"Fred has talked the past few days of going over your way. I have not felt any too good for sometime, my stomach has been reasonably good but I have had some terrible cramps in my bowels, lots of gas pains around where my appendix used to be. My Portland doctor sometime back advised me to lay off business and quit worrying, that is an impossibility during the clam and oyster season especially. And to be frank, I must say that this Taholah operation that we are now mixed in has not been at all soothing to my nerves. We have all that we can do to carry on our real business affairs of financing a pack of clams and oysters, without facing the possibility of having to make good if you fall down on your end. It is my sincere wish that you make good at Taholah, but for the sake of my health I will be frank and tell you I wish that I was out of it. The past

month, or so, has made me feel that I would like to be through with all business worries and confine my efforts only to oysters and possibly salmon eggs. Thanks for the invite to come over and stay all night, right now I do not feel much like going anywhere. I want to make a trip to California toward the latter part of this month, provided I feel more like traveling than I do now.

"Sincerely,
"John"

Becken apparently did not like the tone of this letter, and so expressed himself to Dewey Dee and possibly one of the other Wiegardt boys when they were in Taholah. Dewey Dee testified that Becken showed him the letter, and that Becken was very much put out about it and said, "I am going to pay this bill out just as soon as I get the money."

Respondents both testified that, within a day or two after receipt of the letter of June 2nd, Mr. Becken wrote John Wiegardt a letter which stated in effect that as long as he (meaning appellants) wanted to be out of the business, he could be, and that Becken would pay him as soon as he could. Neither the original nor a copy of the Becken letter was produced. Respondents testified that no copy was made. A demand was made upon appellants to produce the letter, and John Wiegardt testified that he never received such a letter. Respondents were then permitted to testify as to its contents, as above indicated.

It may be admitted that the above letters do not, in and of themselves, show too definitely an intention to terminate the relations of the parties under the contract, but, when considered with the subsequent actions of the parties, we are of the opinion it was the understanding of all parties that such relations were terminated and at an end, except for the payment to be made by Becken.

Respondents testified that after June 2, 1936, appellants advanced no more money, furnished no more credit, and had no more dealings with respondents in any way relative to the Taholah operations, except that on December 5, 1936, Becken went to appellants' office to settle up, and Dewey Dee, the bookkeeper, after an examination of the books, gave Becken the amount of $1,829.44, which Becken paid.

Dewey Dee also testified that the last time any merchandise or supplies were bought on appellants' credit was about June 2 or 3, 1936; that after that there was no credit extended to Becken through their office, and no money advanced for the Taholah operations.

After June 2, 1936, Becken provided for his own credit and furnished his own money, some of which undoubtedly came from his operations at Taholah, and some of which he testified he borrowed, and some came from other sources.

So far as this record shows, after the payment by Becken of the $1,829.44 to appellants on December 5, 1936, respondents and appellants had no dealings of any kind with each other relative to the Taholah operations, except that on December 31, 1937, appellants bought from respondents some salmon eggs valued at $81.90. Appellants paid this amount by giving respondents a credit of fifty dollars for two pairs of scales which had been loaned to Becken during the operations, and giving to Becken a check for $31.90. It does not appear that, at the time the salmon eggs were paid for, appellants claimed that respondents had any other property belonging to the venture, nor does it appear that appellants made any demand for any further accounting.

The record also shows that on December 1, 1938, appellants purchased salmon eggs from Becken of the value of $166.53, for which they gave Becken their check.

We are of the opinion that these two purchases of salmon eggs were no part of the contemplated operations under the contract. The contract contemplated that Becken would carry on a business of buying and selling fish. This conclusion is borne out by paragraph eight of the complaint, which describes the business to be conducted by Becken as a general fishing business, dealing with fish in every way, including buying and selling fish, catching fish, storing and handling fish in any lawful way.

As indicating that appellants understood the contract was terminated, and knew that Becken was procuring his own credit connections, respondents introduced defendants' exhibit seven, which is a letter from appellants to Oregon

Marine Supply Company of Portland, under date of December 7, 1936. This letter states:

"Attached herewith is our check in the amount of $978.26 to close our 'Becken account at Taholah.'

"We have added $6.55 to pay interest charges beyond your last statement of November 10th. We have made various deductions from your statement as listed.

"There seems to be a freight allowance of $4.80 in dispute. Mr. Becken claims that he paid this and that this amount is properly deductible. The original freight invoices were sent to you sometime back. If you have anything to offer, we suggest that you write direct to Mr. A. E. Becken at Taholah. *Mr. Becken is handling his own purchases from now on at Taholah, therefore should he order of you he is responsible for the payment.*" (Italics ours.)

The above letter certainly indicates that appellants recognized no further obligation to furnish credit to Becken. It will be noticed that the check enclosed with the foregoing letter was not sent until after payment by Becken of the money on December 5th.

There is nothing in the record which indicates that respondents tried in any way to cover up their operations. Neither Mr. nor Mrs. Becken knew much about bookkeeping, but they kept as best they could a record of their operations. Mr. Becken testified he had repeatedly asked appellants to examine his accounts, but they did not seem interested.

Mr. Becken further testified that no profit resulted from the operations, and that he had so stated to John Wiegardt. The record does not indicate that there was any unfriendly feeling between the parties to this litigation, except possibly on the part of Becken after receipt of the letter of June 2nd, and Becken testified that he did not know appellants were claiming any further rights under the contract until the suit was started by appellants in 1939, which was more than three years after appellants had ceased to furnish any credit or advance any money for the operations.

The only explanation John Wiegardt gave for not asking for an accounting of the profits of the business, if there were any, was that he thought Becken would supply them with

an account. We refer again to what was said by Mr. Becken to John Wiegardt on December 5, 1936, at the time Becken made the payment of $1,829.44. In the cross-examination of Mr. Becken, the following appears:

"Q. I can put another question. In your settlement of December 5, there was no mention made of the assets that the joint venture or partnership had? A. I told John there was no profits. The losses were more than any assets that were there. A good deal more. Q. But you furnished no statement at the time? A. No, sir. Q. Of either profit or losses? A. No, sir."

We have examined all the exhibits introduced herein, among which were certain letters introduced by appellants. These letters do not indicate to us that the operations under the contract were not abandoned on or about June 5, 1936.

Considerable stress is laid by appellants upon a transaction between Mrs. Becken and her father, J. B. Fisher, who lived in Illinois City, Illinois. The Beckens testified that they borrowed three thousand dollars from Mr. Fisher, for the purpose of obtaining money to carry on the business. There is ample testimony to justify the conclusion that Mr. Fisher did loan his daughter this money, but there is a conflict in the testimony as to whether or not it had been paid back. The Beckens testified that it had, while Mr. Fisher in his deposition stated that five hundred dollars had been paid back. This conflict in testimony would at most only have a bearing on the credibility of the Beckens. The trial court apparently believed they received the money.

There was also an attempt to impeach respondents' testimony in this trial by a reference to their testimony in the former action. While there seems to have been a difference in the testimony, respondents explained the difference.

The trial court saw all these witnesses, heard their testimony and their explanations of any seeming inconsistencies, and apparently accepted respondents' version of what occurred.

After an examination of the record, we are of the opinion that there is substantial evidence to support the judgment entered. We have been unable to arrive at any conclusion

other than that all rights and liabilities of all the parties under the contract were mutually abandoned on or about June 5, 1936, with the understanding that respondents were to pay to appellants all advancements made by appellants and any and all balances due the Oregon Marine Supply Company of Portland, and the F. G. Foster Supply Company of Hoquiam, for supplies furnished to Becken on appellants' credit. This Becken admittedly did on December 5, 1936.

The actions of the parties, at least until 1939, when appellants brought the first action, are so inconsistent with any other conclusion that they seem to us to speak more plainly than words. It is impossible for us to believe that had appellants thought they had any rights in this venture under the contract, either in profits or property, they would not have made some claim or asked for some accounting during the three-year period following the time they ceased to participate in any way in the business.

■ We are of the opinion that the following quotation from 13 C. J., p. 601, § 624, cited in *McMillen v. Bancroft,* 162 Wash. 175, 298 Pac. 460, is applicable here:

" 'A contract will be treated as abandoned where the acts of one party inconsistent with its existence are acquiesced in by the other.' "

While we think that in the present case the acts of all parties show that they considered the contract and all rights thereunder terminated, they certainly show a course of conduct on the part of respondents inconsistent with the contract, in that they neither asked for nor received any money or credit from appellants after June 5, 1936. They did not make, nor were they asked to make, any report of their operations, and they made no remittance to appellants, other than the payment of December 5, 1936.

It seems to us the letter of December 7, 1936, addressed to Oregon Marine Supply Company, when considered in connection with the subsequent actions of appellants, almost

conclusively established that appellants acquiesced in the abandonment of the contract and all their rights thereunder.

For the reasons herein assigned, the judgment of the trial court is affirmed.

SIMPSON, C. J., BEALS, STEINERT, and GRADY, JJ., concur.