[No. 30791.   Department Two.   May 3, 1949.]

GEORGE MORANGO, *Respondent*, v. RICHARD PHILLIPS
*et al., Appellants.*[1]

[1]Reported in 205 P. (2d) 892.

*Welts & Welts* and *Alden B. Whelan,* for appellants.

*Chavelle & Chavelle,* for respondent.

GRADY, J.—This action was brought by George Morango against Richard Phillips, J. H. Powell, and R. E. Farrell, and their respective wives, individually and as copartners doing business under the name of Phillips & Powell, to recover damages arising out of an alleged breach of a written contract to complete the remodelling of a dwelling house. The court made findings of fact and conclusions of law and entered a judgment awarding the plaintiff a money recovery. The defendants have appealed from the judgment.

The theory upon which the respondent proceeded at the trial was that on December 6, 1946, he made a written contract with appellants to have a dwelling house remodelled according to plans which had been drawn for the sum of seven thousand dollars, upon which he had paid $3,851; that, after some performance, the appellants breached the contract and refused to complete the remodelling work.

The defense and counterclaim presented by appellants was that in the latter part of September, 1946, the respondent employed them to remodel his dwelling house on a cost plus 16% basis; that appellants performed work and furnished materials up to December 6th, at which time the respondent and appellants made the written contract above referred to whereby the appellants promised to complete the remodelling of the house for the sum of seven thousand dollars and receipt of $3,151 was acknowledged; that the written contract was not followed by respondent, in that he took charge of the building operations, made changes therein, increased the labor to be done and material to be furnished, and interfered with the workmen and discharged some of them; that appellants complied with the orders and requests of respondent in deviating from the written contract; that, sometime about the first part of March, the respondent breached the contract by ordering the appellant to cease further performance thereof. The appellants claimed they were entitled to be compensated for what they had done and performed pursuant to the verbal contract between

October 2nd and December 6th on a cost plus 16% basis; also the reasonable value of services performed and materials furnished subsequent to December 6th and damages for breach of the written contract.

The trial court adopted the theory of the respondent and allowed him a recovery of $5,731.31.

During the progress of the trial, counsel for respondent objected to the introduction of any testimony tending to prove the existence of a verbal agreement for the furnishing of labor and materials in connection with the remodelling of the dwelling house between October 2nd and December 6th on a cost plus 16% basis, the basis of the objection being that the reception of such evidence would be a violation of the parol evidence rule. The court was of the opinion that the effect of such parol evidence would be to change, alter, and vary the terms of the written agreement made December 6th and rejected the offers of proof. The trial was limited to a determination of the rights, duties, and obligations of the parties under the written contract. At the close of submission of evidence by appellants, the court struck the parts of the answer relating to the verbal agreement.

The question presented is whether any verbal agreement which the respondent and appellants had for services to be rendered and materials to be furnished on a cost plus 16% basis between about October 2nd and December 6th became merged or integrated into the written agreement of December 6th, or whether the parties operated pursuant to a separate and distinct verbal agreement wholly independent of the written agreement.

██ We are of the opinion that a verbal agreement to perform services and furnish materials in the reconstruction and remodelling of a dwelling house on a cost plus basis and which was partly performed, would be entirely different from a written contract to complete such reconstruction and remodelling on a lump sum basis. There would be no inconsistency between such contracts. The performance of such a verbal agreement would continue until the work was completed or the parties by mutual consent

terminated the same. The performance of one contract would take up where the other left off. It seems very clear to us, from the pleadings and the offers of proof made by appellants, that the respondent and appellants could have had two separate and distinct contracts, one of which was verbal and the other written, each independent of the other and each supported by its own consideration, even though the ultimate objective of the two contracts was the reconstruction and remodelling of the same dwelling house.

The applicable rule of law to the situation presented is that, although an agreement between parties is reduced to writing, the law does not merge into such writing a prior or contemporaneous verbal agreement between the same parties which is distinct from and not in conflict with the writing. *Driver v. Galland*, 59 Wash. 201, 109 Pac. 593; *Mapes v. Santa Cruz Fruit Packing Corp.*, 26 Wn. (2d) 145, 173 P. (2d) 182; *Moe v. American Ice & Cold Storage Co.*, 30 Wn. (2d) 51, 190 P. (2d) 755; *Moran Brothers Co. v. Pacific Coast Cas. Co.*, 48 Wash. 592, 94 Pac. 106; 3 Jones, Commentaries on Evidence (2d ed.), § 1490; 5 Wigmore on Evidence (2d ed.), § 2430.

We shall not analyze or review the foregoing cases. They are factually different from the case before us, but are cited to demonstrate that we have recognized and applied the foregoing rule to situations where it was claimed that a prior verbal agreement had become merged in a subsequent written agreement between the same parties, and had decided that there was not such a merger and parol evidence had been properly received to prove the terms of the verbal agreement.

In the case of *Mapes v. Santa Cruz Fruit Packing Corp.*, *supra*, we said:

"In the final analysis, the question always resolves itself down to this: Does the parol testimony actually vary or change the terms of a written contract? If it does, it is not admissible. However, if, contemporaneously with the execution of a writing, the parties entered into a distinct, collateral contract, which had not been reduced to writing, such contract may be proved by parol testimony so long as

such evidence is not inconsistent with, and does not contradict, the writing."

We also referred to the rule in *Moran Brothers v. Pacific Coast Cas. Co.*, *supra*, in the following language:

"The rule that the terms of a written instrument cannot be varied by parol testimony cannot be gainsaid, and it is well established that all prior contracts are merged in the written agreement, and that such agreement is a final repository and evidence of mutual obligation. But it is just as well established that parol testimony is admissible to explain written contracts when there is anything doubtful in the language used, or to supply omissions, or to prove agreements between the parties which were not merged in the contract though they might have relation to the same subject-matter. It is the province of the court to determine, both from the written contract and from oral testimony, the intent of the parties in relation to what was incorporated in the written agreement."

This statement is followed by a quotation from § 2430 of Wigmore on Evidence cited above.

The trial court was in error in rejecting the offers of proof and striking the allegations of the counterclaim.

The factual situation with reference to the written contract made December 6th is substantially as follows: After making the contract, the appellants resumed the work of remodelling the dwelling house. In the early part or middle of January, work was suspended because of inability to secure necessary materials. At that time, there was nothing to indicate that either party had considered any breach or termination of the contract. About two or three weeks after the work was suspended, respondent informed one of appellants he did not want the other appellants nor any of their workmen on the job. He also informed appellant Phillips, when inquiry was made about the work proceeding, that appellants were not to go ahead with the work and suggested they see his attorney.

The parties went to the office of an attorney with a view of adjusting some differences which had arisen, at which time respondent was somewhat vituperative in addressing two of the appellants, and gave them to understand that he

did not desire them to proceed any further with the contract. At the time of the conference at the office of the attorney, the appellants were willing to proceed with the work. The respondent denies that he made any of the statements attributed to him by appellants.

We are not assisted by any written memorandum decision of the trial judge or any oral expression by him upon the comparative credibility of the various witnesses who testified upon the matter now being discussed. The appellants were corroborated by witnesses who appear to have been disinterested. We gather from the record and the manner in which the respondent expressed himself that he is of foreign extraction and possesses but little education, and we have taken these factors into consideration in interpreting his testimony.

Some of the statements made by respondent, as expressed by the witnesses when trying to repeat his words, might indicate that he intended to order and direct the appellants to cease work under the contract and thereby breached such contract; but taking the testimony of the witnesses as a whole, we are inclined to the view that respondent expressed, or at least intended to express, a desire to terminate the contract of December 6th, and thereby make an offer of rescission. We do not think what was said took such form as to justify the conclusion that there was a breach of contract by respondent. It does not appear that appellants made any verbal response to what respondent said to them, nor that they believed they were being excluded from performance. Their subsequent conduct indicated they accepted the offer of rescission. It is our opinion that the finding made by the court that the appellants refused to continue with the performance of their contract is not supported by a preponderance of the evidence.

Our factual conclusion is that neither party breached the contract. The respondent made an offer of rescission which was accepted by appellants, and the contract was terminated in such manner.

This case presents a somewhat unusual situation in that neither party is claiming there was a mutual rescission.

Each party claims the other breached the contract. The parties having submitted their controversy to the court, it necessarily follows that the court must be the final arbiter as to the effect to be given to what the parties said and did when considering whether there was a breach of the contract by either party or a mutual rescission thereof. We are of the opinion that both parties have misconstrued the true effect of their respective acts, words, and conduct.

■ Mutual rescission is a matter of contract and involves a meeting of the minds of the parties. An assent to an offer of rescission may be express or implied. *Letres v. Washington Co-op Chick Ass'n,* 8 Wn. (2d) 64, 111 P. (2d) 594; *Wiegardt v. Becken,* 21 Wn. (2d) 59, 149 P. (2d) 929; 17 C. J. S. (Contracts) 878-882, §§ 386-389.

■ The final question to consider is the result following the mutual rescission of the contract. We have decided many times that, before a party to a contract is entitled to a rescission, he must be willing to do equity and restore that which he has received from the other party; and, if a rescission is had, either as the result of a decree of court or by mutual agreement, each party to the contract must place the other *in status quo* in so far as it is practicable or possible so to do. The contract is at an end as though it never existed. A statement and application of the foregoing rules is to be found in the following: 12 Am. Jur. (Contracts) 1031, § 451, and cases cited in the notes to the text; *McMillen v. Bancroft,* 162 Wash. 175, 298 Pac. 460; *Russell v. Stephens,* 191 Wash. 314, 71 P. (2d) 30; *Hopper v. Williams,* 27 Wn. (2d) 579, 179 P. (2d) 283.

■ During the trial, proof was offered with reference to extra work, labor, and materials not provided for by the plans referred to in the written contract, to which objection was made on the ground that there were no written orders for same as required by the contract. The contract contained a provision requiring written orders with reference to alterations or deviations from the specifications involving extra cost of labor and material. The appellants contend the extras were requested by respondent. If any

extras were furnished at the express request of the respondent, recovery can be had therefor, as such request would amount to a waiver of the contractual provision. *Crowley v. United States Fidelity & Guaranty Co.*, 29 Wash. 268, 69 Pac. 784; *Bjerkeseth v. Lysnes,* 173 Wash. 229, 22 P. (2d) 660; *Eggers v. Luster,* 32 Wn. (2d) 86, 200 P. (2d) 520.

The judgment of the trial court is reversed, and the cause remanded for the purpose of determining the relationship of the respondent and appellants between the latter part of September and December 6, 1946, and the mutual rights, duties, and obligations of the parties arising therefrom, and also to adjudicate their respective rights arising out of the rescinded contract. The appellants will recover costs on this appeal.

JEFFERS, C. J., ROBINSON, SIMPSON, and SCHWELLENBACH, JJ., concur.