[No. 31204.   Department One.   April 20, 1950.]

PETER D. WOLARICH, *Respondent,* v. LLOYD B. VAN KIRK, *Appellant.*[1]

[1]Reported in 217 P. (2d) 319.

*Hutchinson & Ulvestad,* for appellant.

*Simmons & McCann,* for respondent.

DONWORTH, J.—Peter D. Wolarich, as assignee of the payee, instituted this action to recover on a check issued by Lloyd B. Van Kirk (who is the sole party defendant) in the amount of $2,200 upon which payment had been stopped. Defendant demurred to the complaint on three statutory grounds. Upon the overruling of his demurrer by the court, defendant answered admitting that he had stopped payment of the check, and denying certain other allegations of the complaint. He also set up three affirmative defenses: first, failure of consideration; second, that the plaintiff was never at any time an innocent purchaser for value of the check, knowing at the time of purchase that it was void and of no value; and third, that the assignment of the check was merely an attempt to fraudulently obtain $2,200 from the defendant. In his reply, the plaintiff denied these affirmative defenses.

The cause was tried to a court sitting without a jury, and, at the conclusion of the trial, the court rendered its oral decision in favor of the plaintiff. The defendant thereupon moved for a judgment notwithstanding the decision of the court or in the alternative for a new trial, and, upon hearing, this motion was denied. Findings of fact were made and judgment as prayed for in the complaint was entered in favor of plaintiff, from which the defendant has appealed.

In September, 1947, appellant was in possession of certain premises known as the Horton hotel, situated on Airport way in Seattle, under a lease from the Horton Investment Company which then had approximately two months to run. The value of the unexpired term was three hundred dollars. He owned certain furniture in the hotel building which was worth about five hundred dollars and was operating a hotel there.

During this period, appellant entered into negotiations with the respondent for the sale of the furniture, the business, and a new lease on the Horton hotel for three years

at a monthly rental of $255, with an option of three more years. A sale was agreed upon by the parties for a consideration of nine thousand dollars, of which respondent paid two hundred dollars as earnest money, and agreed to pay appellant $8,800 cash "as soon as deal is closed on or before Oct. 1, 1947." Shortly thereafter, the full nine thousand dollars was paid to appellant by respondent.

In order to be in a position to deliver the new lease to respondent, appellant contacted the Horton Investment Company, the owner of the Horton hotel property. These negotiations (which were carried on without the knowledge of respondent) resulted in an agreement whereby the appellant promised to pay the sum of $2,200 for the purpose of obtaining the new lease and the delivery thereof to respondent.

The lease was executed by the Horton Investment Company and delivered to White & Bollard Realty, Inc., its agents, with instructions to deliver the lease only upon receipt of payment of $2,200. Appellant, on Friday, September 26, 1947, gave to White & Bollard Realty, Inc., his check payable to its order in the amount stipulated. When the check was presented to the bank on the following Monday for certification, it was discovered that payment on the check had been stopped by appellant on the day it was issued. Appellant left Seattle for Alaska a few days later and, at the time of the trial, resided in Seward.

Appellant's reason for stopping payment on the check was given in his testimony as follows:

"When I wanted to sell it, we talked quite a bit, and they wanted $3600.00, Mr. Horton did, for consideration of selling the hotel; and finally it was settled for $2200.00. Well, I agreed to do that. After I got to looking over the old lease, I see a clause in that that said that where you sign a new contract, fifteen per cent of one month's rent would be charged for it, is all would be charged for it. After I had paid that, I thought it wasn't quite fair, that $2200.00, so I stopped the check."

Before respondent had knowledge of these transactions between appellant and Horton Investment Company and its agents, respondent had paid appellant the nine thousand

dollars and had taken possession of, and had commenced operating, the hotel. White & Bollard Realty, Inc., October 8, 1947, wrote respondent that no lease could be entered into between Horton Investment Company and him until the sum of $2,200 was paid. On October 21, 1947, respondent was given notice by White & Bollard Realty, Inc., to vacate the hotel by November 30, 1947. This was followed by the institution of an action by Horton Investment Company against respondent (the precise nature of which does not appear from the record), which was stayed pursuant to a stipulation dated December 31, 1947.

In order to remain in possession and protect his investment, the respondent agreed in this stipulation to pay the sum of $2,200 to the Horton Investment Company, and the latter assigned its interest in the check to respondent. He later paid this sum and received the lease from White & Bollard Realty, Inc., and a written assignment of all its right, title, and interest to the check upon which payment had been stopped. The respondent is prosecuting this action as assignee of this check. We must, therefore, consider this case as though Horton Investment Company were suing on that check.

■ Appellant's brief contains four assignments of error, which may be considered together. His contention on this appeal is that the Horton Investment Company's commencement of an eviction action against the respondent resulted in completely abandoning and terminating appellant's agreement with that company regarding the delivery of the new lease. Appellant argues that, when he sought to abandon the contract by stopping payment on the check, Horton Investment Company could not consistently attempt to evict respondent and recover possession of the premises and at the same time seek to recover the amount of the check. Therefore, by electing to follow the course of eviction, all rights to pursue the second remedy (i. e., sue on the check) were waived. It is further argued that respondent, in accepting an assignment of the dishonored check, stands in the shoes of the Horton Investment Com-

pany and is bound by its actions, and therefore respondent's suit should have been dismissed.

The record does not disclose the nature of the action brought by the Horton Investment Company against respondent, but, assuming it to have been brought for the purpose of ousting him from possession of the hotel, that fact would have no bearing upon our problem because, at that time, the term of the original lease had expired. Respondent, then, was holding over with no right of possession except that of a month-to-month tenant.

There is, furthermore, no showing that the Horton Investment Company ever evicted respondent, who went into possession of the hotel *before* appellant stopped payment on his check and has remained in possession ever since. Respondent never had permission from the Horton Investment Company to take possession of the hotel. He did not even receive an assignment of the original lease. Horton Investment Company merely insisted on the performance of the agreement existing between it and appellant for the delivery of the new lease, which the latter attempted to repudiate after receiving the nine thousand dollars from respondent. It was at all times ready to deliver the new lease (which was in the hands of its agent for that purpose) upon payment of $2,200. We see no inconsistency in the conduct of the Horton Investment Company which precludes it, or its assignee (respondent), from recovering judgment upon the check. The rule applicable to this situation is stated in *Godefroy v. Reilly,* 146 Wash. 257, 262 Pac. 639:

"Furthermore, the doctrine of election of remedies cannot be applied between one of the parties to a contract and a third person, a stranger thereto, since it is applicable only to the parties to the contract."

See 28 C. J. S. 1076, Election of Remedies, § 8.

The two cases cited by appellant (*Croup v. Humboldt Quartz & Placer Mining Co.,* 87 Wash. 248, 151 Pac. 493, and *McMillen v. Bancroft,* 162 Wash. 175, 298 Pac. 460) are so dissimilar on their facts that they cannot be said to furnish any authority for appellant's position here. The general rule correctly stated in *Labor Hall Ass'n v. Danielsen,* 24

Wn. (2d) 75, 163 P. (2d) 167, 161 A. L. R. 1079, as to an election of remedies, has no application to the facts of this case, because we have held that there has been no election of remedies.

In the trial court, appellant argued that a novation or new contractual relation was created by the parties which superseded the original contract. The trial court, in its oral decision, discussed this contention at length and correctly ruled there was no evidence to warrant holding or finding that there was a novation.

The reason stated in appellant's testimony for stopping payment on the check constituted no legal justification for so doing, and respondent, as assignee of the Horton Investment Company, is entitled to recover thereon.

The judgment of the superior court is correct and is hereby affirmed.

SIMPSON, C. J., BEALS, SCHWELLENBACH, and GRADY, JJ., concur.