[No. 30669. Department Two. December 10, 1948.]

FRANK EGGERS et al., *Respondents*, v. P. D. LUSTER et al., *Appellants.*[1]

*Chas. H. Graves*, for appellants.

*Ferguson, Burdell & Armstrong*, for respondents.

[1]Reported in 200 P. (2d) 520.

SIMPSON, J.—Plaintiffs instituted this action to recover from defendants P. D. Luster and Gertrude Luster, a balance of $9,347.30 claimed to be due for extra work on a building contract, and to foreclose a mechanic's lien for the sum due.

In the complaint, it was alleged that shortly prior to April 1, 1946, plaintiffs and defendant P. D. Luster entered into discussions concerning the construction of a building for the defendants; that an estimate was submitted by plaintiffs; that thereafter the parties entered into a contract which provided, among other things, that plaintiffs should construct a building for the defendants Luster, and be paid therefor on the basis of cost of labor and materials, plus ten per cent for overhead or supervision, and ten per cent for profit. It was also alleged that plaintiffs commenced construction of the building in April, 1946, and thereafter submitted periodic statements to defendants, based upon the cost-plus contract, and that defendants made partial payments based upon the statements presented.

The complaint further alleged that, during the progress of the work, defendants made several requests for changes in, and additions to, the original plans, and that such changes and additions were complied with by plaintiffs at a substantial increase in cost with the full knowledge and consent of the defendants. A general description of the changes and additions was set out in the complaint.

In addition, there were allegations to the effect that plaintiffs were required to perform extra work and expend additional sums of money because of the failure of defendants to remove certain heavy machinery and a building from the site where the new building was being constructed. Finally, it was claimed that the reasonable value of the services furnished by plaintiffs was in the sum of $25,125.64; that $15,778.34 had been paid by the defendants, leaving a balance owing in the sum of $9,347.30.

Subsequent to the filing of the complaint, the defendants made a motion for a bill of particulars. The motion,

or request, was complied with by plaintiffs, who filed an itemized statement of the additional costs resulting from changes in the original plans and specifications and those resulting from the failure of the defendants to remove the obstructions from the building site. This bill of particulars set forth the cost of the materials and labor furnished, and also contained computations showing the total amount claimed to be due for each item, including twenty per cent for supervision and profit.

In their answer, the defendants denied that the work was done on a cost-plus contract, but asserted that the final contract between the parties was contained in a letter in which plaintiffs submitted an estimate of the cost of the proposed building. They admitted that the plaintiffs furnished certain labor and materials for the construction of the building, but denied that it was done pursuant to the cost-plus contract. They admitted the performance of one item of additional work, but denied the remaining allegations relating to additional work as contained in the complaint and the bill of particulars. Their cross-complaint alleged that, on or about April 1, 1946, a contract was entered into between the parties providing for the construction of a building by plaintiffs for the price of $13,400; that, upon completion of the building, the defendants made final payment in accordance with the contract; further, that the defendants thereafter discovered that plaintiffs had failed to pay for certain materials and labor used in the construction of the building, and the defendants were required to, and did pay, the sum of $1,164.21 in order to remove liens that had been filed by the people who furnished the materials and labor. It was finally alleged in the cross-complaint that the plaintiffs had constructed the building in a defective manner, to defendants' damage in the sum of $2,460.

The reply put in issue the charges made in the cross-complaint.

The cause was tried to the court. At the conclusion of the trial, findings of fact and conclusions of law were en-

tered by the trial court in favor of the plaintiffs; thereafter, judgment was entered in accordance with the findings and conclusions. This appeal followed.

The assignments of error are:

"1. The trial court erred in entering judgment against the Appellants, in favor of the Respondents.

"2. The trial court erred in entering certain parts of Finding of Fact VIII, allowing Respondents for extras, as follows:

"(a) For excavation of alley due to non-removal
of owner's machinery........................... $  156.02
"(b) For brick wall in lieu of concrete blocks......... 2,513.64
"(c) For plumbing not required on plans.............. 501.02
"(d) For increase in size of door.................... 300.00
"(e) For delay in non-removal of house.............. 500.00

"3. And upon Appellants' Cross-complaint, assign further error under Finding of Fact X, as follows: inadequate counter-damages on account of defective cement floor.

"4. Inadequate allowance (as an off-set to extras) for elimination of north wall of building.

"5. The court erred in entering Findings of Fact IV, and V.

"6. The court erred in entering the Conclusions of Law.

"7. The trial court erred in denying Appellants' Motion for New Trial."

Respondents were copartners engaged in business as building contractors under the firm name of Olympic Designers & Builders. Appellants own the North End Machine Works, located near Lake Union in Seattle. They are engaged in the business of building heavy sawmill machinery. The building contracted for was an extension of the main plant for use as an assembly room—that is, as machine parts were made in the main plant, they were then to be removed to the new room and assembled into completed machines. The addition consisted of one large room with three exterior walls, a flat roof and a cement floor about six feet below the level of the floor of the main plant. As finally constructed, it covered three lots. It was about ninety feet in length on the east side, one hundred fifteen feet on the south side, thirty-eight feet on the west side, and one hundred two feet on the north side. The

north side of the building adjoined the older building owned by appellants, and a passage between the two buildings was constructed. The three remaining sides of the building were approximately twenty feet in height. The floor covered almost sixty-five hundred square feet, and it was constructed of concrete three and one-half inches thick.

Prior to the making of the contract, appellants gave respondents certain data as to the kind of a building they wanted to erect, the cost not to exceed ten thousand dollars. In March of 1946, respondents drafted a proposed building contract and submitted it to appellants for their consideration. The proposal provided for the construction of a building on a cost-plus basis—that is, the appellants would be bound to pay the entire cost of the building plus twenty per cent, which would cover the overhead expense or supervision by the contractors and a ten per cent profit. Appellants rejected the proposition at that time and stated that they would consider only a contract which provided for a definite sum bid.

April 1, 1946, respondents submitted a written proposal, which provided among other things that, "This proposal includes all labor and materials required in connection with the two buildings, also all engineering, building permits, inspection, etc., except electrical work." The estimate included the cost of the work as above outlined at $13,400. The proposal provided that no extras should be added to the price without the written consent of the owner, Mr. P. D. Luster. This bid was to become a part of the contract and be attached thereto. This proposal was signed "EGGERS & SEDILLE, Per Eugene E. Sedille, co-partners." It was accepted in writing by P. D. Luster. Witness was B. E. Shellebarger.

The parties entered into a written agreement dated April 1. 1946. This last agreement, known in the litigation as plaintiffs' exhibit No. 2, did not refer to the prior agreement. It did, however, refer to the building and provided

that the respondents would erect it according to plans and specifications, and that:

"6. The Owner agrees to pay the Contractors for the performance of this Contract, his actual cost of labor and material, plus ten per cent (10%) for overhead and ten per cent (10%) for profit. The overhead and profit is based only on the actual cost of labor and material. The Owner agrees to make payment on account thereof as follows:

"7. On the 5th and 20th day of each month 85% of the actual payroll and on the 5th day of each month 85% of all materials incorporated in above building or stored on site for previous month and the balance of contract within 30 days after completion."

Respondent Eugene E. Sedille testified that, following the submission of the bid, and prior to the commencement of any work, he learned of certain conditions which were different than he had understood prior to that time. These conditions were that Mr. Luster advised he was going to carry on the assembly of machinery in the new building while it was being built, and that he wanted a piece of slab put down as quickly as possible so that he could keep on manufacturing; that, at the time the bid was prepared, and afterward, various parts of machinery were moved in on the side where the new building was being constructed, which in turn were in the respondents' way of building a foundation and excavating equipment.

The witness testified further that there was a house on the premises where they were going to erect the building; that he had been informed that the house would be removed, but he discovered that it was not to be removed immediately, but that there was about a thirty-day period that the occupants of the building had before they were to move off the premises. He said that he told Mr. Luster that, under the conditions just mentioned, it would be impossible to take a lump-sum contract, and, on the strength of that, he prepared the cost-plus contract and delivered it to Mr. Luster. This was plaintiffs' exhibit No. 2; it bears

the signature of the respondents and North End Machine Works By P. D. Luster, Owner.

Appellant Luster testified that both contracts, the first known as plaintiffs' exhibit No. 1, and the second as plaintiffs' exhibit No. 2, were signed at the same time, and prior to the first day of April, 1946.

S. M. Kellum, an employee of appellants, testified that exhibit No. 2 was brought to appellants' office by Mr. Sedille in March, and that it was left in the office. Appellants refused to sign the contract known as exhibit No. 2, and, thereafter, exhibit No. 1 was brought to appellants' office and signed by all of the parties concerned. He stated that the cost-plus agreement was the one signed first, and the two agreements were then attached, or stapled, together.

Respondents proceeded with the work of erecting the building. May 10, 1946, they sent or delivered to appellants an estimate for "Payment No. 1." This estimate showed expenditure for materials and payroll, etc., of $867.28, and a charge of twenty per cent on $837.53, making a total of $1,034.78. The statement showed a previous payment by appellants of $232.34. June 5, 1946, respondents presented estimate No. 2. This showed a total expenditure of $3,774.08, and two overhead charges of ten per cent each, or a total of $754.80. The entire bill amounted to $4,528.88, and showed a previous payment by appellants of $1,228.89. The third request for periodical payment was dated July 1, 1946, sheet No. 2 of which showed expenditure of $4,710.82. There was one charge of ten per cent for overhead amounting to $471.08, and another ten per cent charge for profit of $471.08, making a total of $5,652.98. It also showed an amount of $5,078.45 for previous payments.

July 29th, another statement was submitted in the amount of $3,823.20. August 1, 1946, another statement was sent to appellants showing a total expenditure of $4,696.29, plus a ten per cent overhead in the sum of $469.63, and a ten per cent profit of $469.63, making a grand total of $5,-635.55. The total amount shown to be due on this estimate was $5,139.94. At the bottom of the statement, there was a

notation, "Received Payment a/c $1500 - ck. No. 6903 8/15." Another notation was as follows: "Rec'd 2nd pay. a/c $1000 8-23-46." The September 1st statement showed expenditures of $2,650.80 for materials and labor, and a charge of ten per cent overhead amounting to $266.50, and a ten per cent profit of $266.50.

There is no evidence in the record which indicates that appellants, at any time during the course of the work, made any protest concerning the method of payment, or denied the existence of the cost-plus contract. The evidence produced during the trial, especially that relative to the furnishing of estimates during the construction which included statements charging twenty per cent for overhead and profit, convinces us, as it did the trial court, that the work of erecting the building for appellants was done on a cost-plus basis.

We shall now consider the claims made that the court erred in allowing extras—that is, in allowing compensation for construction work which was not mentioned or shown in the original plans. The record discloses that, during the progress of the building, various changes, additions, and substitutions were made in the structure. Most, if not all, of these changes, additions, or alterations were made without the written consent of the owner, as required by the contract.

This court has held in *Wiley v. Hart*, 74 Wash. 142, 132 Pac. 1015, and *Bjerkeseth v. Lysnes*, 173 Wash. 229, 22 P. (2d) 660, that, in the absence of waiver of the stipulation requiring written consent, an owner of a building cannot be held liable for extra work and materials. We have also held that an owner must pay for extras where it is shown that he permitted and authorized the changes, regardless of the fact that there was no compliance with the contract requiring the written consent of the person who had the work done.

All of the changes, additions, and alterations involved in this case were made with the knowledge and consent of appellant, who was present in his shop directly

adjoining the building site every day during the period of construction. We hold that appellant P. D. Luster waived the requirement of written consent contained in the contract and must pay for the cost of labor and materials necessary to make the changes, additions, and alterations.

The statement of facts reveals that the facts relative to the changes were very much in dispute. Respondents' evidence showed that the additions or alterations consisted of constructing walls on the two street fronts of brick instead of concrete blocks. A change required the placing or installation of steel lintels in order to support the building; that a balcony was erected on the building along the University street side, the balcony being eleven or twelve feet wide, and about sixty feet in length. Because of the installation of a toilet in the balcony, the existing sewer line had to be replaced by cast iron pipe; some larger doors had to be put in in the loading dock; also a trolley beam had to be erected over the loading dock, and there were some additional sashes installed due to change in size of windows; a ramp was built to connect the two buildings. They had to remove part of an old wall and put in girders, and make some extra excavation in the alley section. The respondents built a stairway with handrails in the old building, and took a wall down in order that air might come into the building.

Respondents testified to these extras that they were not shown on the original plan; that the amounts paid for materials and labor were proper expenditures in order to make the necessary additions and changes. These individuals were men of long experience in the contracting business. Their evidence evidently appealed to the trial court.

On the other hand, appellant P. D. Luster testified that many of the portions of the building claimed to be extras had been agreed to beforehand; that the prices paid for materials and labor in constructing the claimed extras were not reasonable in view of the work necessary to make the changes.

The evidence produced by appellants was not sufficient nor of that character to compel this court to adopt a holding opposite to that of the trial court. The trial court

saw and heard all the witnesses testify. He decided, after listening to the testimony, that the extra work was performed as stated by the various witnesses appearing for respondents, and was in accordance with the oral agreements made between the parties during the process of constructing the building; further, that the prices charged were reasonable and necessitated by the work done.

Respondents attempted to add to their cost the salary paid to respondent Eggers, the superintendent, in the sum of fifteen hundred dollars. The court refused to allow any amount paid to respondent, who acted as superintendent of the building construction. The court also allowed as damages for faulty construction of the concrete floor the sum of one thousand dollars, and for the elimination of the north wall, the sum of one thousand dollars. Other claims for negligence made by appellants were denied by the trial court.

Examination of the record convinces us that the trial court carefully considered all of the evidence introduced relating to all phases of the controversy; further, that he made a proper accounting between the parties, and that his judgment should be affirmed. It is so ordered.

MALLERY, C. J., ROBINSON, and SCHWELLENBACH, JJ., concur.

HILL, J., dissents.

January 21, 1949. Petition for rehearing denied.