[No. 32020. Department One. August 7, 1952.]

PAINE-GALLUCCI, INC., *Respondent*, v. EIVIND ANDERSON, *Appellant*.[1]

[1]Reported in 246 P. (2d) 1095.

*Henderson, Carnahan, Thompson & Gordon,* for appellant.

*Gagliardi, Ursich & Gagliardi,* for respondent.

GRADY, J.—This action was originally commenced by respondent against appellant, the General Casualty Company of America, and the city of Tacoma to recover a money judgment, including interest and attorney's fees, to foreclose a lien upon moneys retained by Tacoma and a deficiency judgment against appellant and the casualty company, the latter being the surety upon a bond given by appellant. The respondent dismissed its action against the casualty company. The city of Tacoma paid the retained fund into the registry of the court. The court rendered a money judgment against appellant with interest and attorney's fees, ordered that the lien upon the money paid into court be foreclosed and such fund applied on the judgment. The court decreed that the contract which furnished the basis for the money judgment be reformed.

The case history is quite complicated, but we shall set forth only so much of it as affects the three questions we have to decide on this appeal—(a) which party to the contract between appellant and respondent was obligated to defray the expense of replacing street surfacing referred to as the "oil mat," (b) whether respondent was entitled to an award for attorney's fees, and (c) the amount of interest on moneys owing that appellant should pay.

Appellant owned a tract of land which he desired to develop and sell in parcels for building sites. He petitioned the city to create a local improvement district and install a pipeline to carry water from the main line to his property. The engineer made an estimate of the cost of installation. Appellant feared the bids for the installation might be so high the work could not legally proceed. To avoid this possibility, he made a bid, the amount of which was a few dollars under the estimate. He was awarded the contract October 29, 1946.

Respondent and appellant had a conversation with reference to a subcontract for the installation of the pipeline, and among other matters discussed was the question whether the surfacing of one of the streets (oil mat) would be disturbed. Appellant was of the opinion that the inner edge of the trench would be approximately two feet from the outer edge of the oil mat, hence there need be no disturbance. A few days later (January 17, 1948), respondent made a written proposal to appellant to furnish certain materials and lay the pipeline for a stated price and to enter into a contract if the proposal was acceptable. The proposal contained the following:

"We propose to furnish all labor and equipment except for the repair of the oil mat street repairs . . ."

The proposal contained a promise that respondent would make repairs to any concrete and asphaltic concrete pavement made necessary by the crossing of certain streets by the pipeline. Below the signature to the proposal appears the following:

"If this proposal is acceptable we expect to enter into a contract with you."

About a week later, the parties met at the office of an attorney. Appellant gave the proposal to the attorney. A contract was prepared and executed; it provided that respondent would replace and repair any broken up concrete and asphaltic pavement, but made no mention of repair or replacement of oil mat. The former would be made necessary by reason of crossing paved streets, and the latter if the trench was excavated along an oil mat surfaced street. The contract contained the following provision:

"The party of the second part [respondent] agrees to lay and construct the water main in accordance with the approved plan as set forth by Specification No. 247, Local Improvement District No. 5166, furnish all of the labor and all the machinery, and the following material and none others: Concrete and asphaltic concrete to replace and repair any broken up pavement; Three concrete anchors; Bankrun sand and gravel; Pig lead; . . ."

The specification referred to contained the following:

"The contractor [appellant] shall restore all paving, oil mat or other street surfacing, curbs and sidewalks under direction and to the satisfaction of the city engineer."

Respondent laid the pipeline. In doing so, some of the oil mat was destroyed. The city declined to release the reserved fund unless the oil mat was replaced. Appellant took the position the contract had not been completed by respondent. In order to break the stalemate, respondent contracted with Tacoma and it replaced the oil mat. Respondent paid Tacoma six hundred dollars for the work it did, and this amount is included in the complaint in this case.

In its complaint, respondent alleged that it had been agreed and understood between it and appellant that the latter would either replace or pay the cost of replacing the oil mat, but "through mistake and inadvertence the replacing of the said oil mat by the defendant herein was omitted and left out of said contract, notwithstanding the fact that it was clearly agreed and understood that the replacing of the oil mat was to be done by defendant Anderson." The complaint did not ask for reformation of the contract.

The respondent secured a judgment against appellant by default. The judgment provided that the contract be reformed to include therein a provision that the defendant Eivind Anderson pay for the replacing of the oil mat. Prior to this time, respondent had filed a claim against the bond given by appellant pursuant to RCW 39.08.040. After the entry of the judgment, respondent requested of and the court entered an order dismissing the action against the surety. The judgment was later vacated pursuant to an order of this court (*Paine-Gallucci, Inc. v. Anderson,* 35 Wn. (2d) 312, 212 P. (2d) 805). In both the first and second judgments, the court awarded respondent an attorney's fee of four hundred dollars.

At the trial of the action, there was received in evidence the written proposal, the contract, and specification No. 247. Testimony was submitted that either the attorney who prepared and dictated the terms of the contract failed to include

therein the negative provision relative to the oil mat, or that such omission was made when the contract was typewritten. The appellant does not claim error in the acceptance by the court of the theory of reformation advanced by respondent. The appellant met the proof by asserting that he had never received the proposal, that it was not presented to the attorney for use in preparing the contract, and that at all times it had been clearly understood and agreed that if any oil mat was disturbed respondent would replace it at its own expense. On appeal, appellant took the position that the evidence submitted in support of the theory of reformation was not of the clear and convincing character required.

The parties contemplated the execution of a written contract embodying such of their preliminary negotiations as had been agreed to, the terms of the written proposal and a provision requiring respondent to lay and construct a water main in accordance with specification No. 247. By his contract with the city of Tacoma, appellant had become obligated to replace any oil mat disturbed by the construction work. The proposal excepted repair of oil mat. The contract prepared by the attorney did not include this exception and was incomplete in that respect. After the pipeline was constructed a dispute arose as to whose obligation it was to replace the oil mat, and litigation resulted.

In such a situation, the court may be asked to reform the contract so as to include the omitted provision, or, if it appears to the court that the entire agreement of the parties was made up of more than one written document, that such documents were made as parts of the same transaction, related to the same subject matter and were not inconsistent with each other, all of them may be considered together, and from them a determination made as to all of the terms of the agreement and the intention of the parties. Rules with reference to the latter approach are discussed in *Speirs v. Jahnsen,* 143 Wash. 297, 255 Pac. 117; *Standring v. Mooney,* 14 Wn. (2d) 220, 127 P. (2d) 401; *Vance v. Ingram,* 16 Wn. (2d) 399, 133 P. (2d) 938, and 12 Am. Jur. 781, Contracts, § 246.

■ From the manner in which the parties made up their transaction, it must be said that their contract consisted of the three written documents. These documents all related to the construction of the water main and were parts of the same transaction. They are consistent with each other. The only suggestion to the contrary is that, inasmuch as appellant had become obligated to replace the oil mat by virtue of one of the provisions of the specifications which were made a part of his contract by reference, it would follow that, when respondent agreed to lay and construct the water main in accordance with "the approved plan as set forth by specification No. 247," he owed that duty to appellant.

There would be merit to such a claim if respondent had undertaken to do and perform all that was contained in appellant's contract with Tacoma. The respondent agreed to furnish the labor and equipment to lay and construct the water main and to furnish certain specified materials therefor. The greater part of the materials necessary for the job were to be furnished by appellant. The respondent did not have equipment with which to replace oil mat. Its contract price was $9,920, while that of appellant was $22,774.66. The proposal specifically excluded replacement of oil mat, and the cost thereof was not included in the amount of respondent's bid. The proposal was not inconsistent with the specification, but contained an exception to appellant's covenant to replace oil mat.

Whenever the method of considering instruments together is used in order to determine what was the full and complete contract of the parties, the courts may avoid the necessity of determining veracity of witnesses, the weight to be given to their testimony, whether the evidence is clear, cogent, and convincing, and other difficult problems connected with the reformation of a written instrument. In reaching our conclusion, however, we have accepted the finding of the court that appellant did receive and accept the proposal.

■ On the subject of attorney's fees, it is our opinion that, owing to the situation which existed when the final judgment was entered, the court was in error in making such an award. Authority to award attorney's fees when a claim

is filed against the surety on the contractor's bond is given by RCW 39.08.050. Respondent had the right of action given by RCW 39.08.040. It brought such an action and properly made appellant and the surety on his bond parties thereto. *Kellogg v. Nelson,* 146 Wash. 572, 264 Pac. 15.

By the default judgment taken by respondent, it obtained relief primarily against 'the reserved fund held by Tacoma and against appellant alone for any deficiency. Respondent obtained no judgment against the surety, deficiency or otherwise. At its instance, the court dismissed the case against the defendant surety. After the judgment was vacated, respondent abandoned its right of action given by RCW 39.08.040 and elected to foreclose its lien upon the reserved fund as provided for by RCW 60.28.010 and RCW 60.28.030. These statutes make no provision for an award of attorney's fees upon foreclosure of the lien created thereby. RCW 60.28.020 directs how the reserved fund shall be distributed, but the attorney's fees referred to are those awarded upon successful proceedings pursuant to RCW 39.08.040 and RCW 39.08.050.

 The appellant complains that the court made an improper award of interest in the judgment. The amount owing on the contract when the action was brought was $2,049.92. Respondent claimed an additional indebtedness owing of $600 for the replacement of the oil mat. Pending the appeal from the first judgment, Tacoma paid $2,577.09 into the registry of the court. Respondent withdrew that money on December 28, 1948, and returned it November 30, 1950. Respondent concedes that it is not entitled to interest during the time it had the use of such money. In his answer served on December 4, 1950, appellant conceded that respondent was entitled to have the reserved fund applied in payment of the sum of $2,049.92. It would thus appear that respondent is entitled to interest on the latter sum from May 20, 1948, the date the work was completed, to December 4, 1950. Also interest on the item of $600 from the date respondent paid that sum to Tacoma for replacing the oil mat to the date of the second judgment.

The judgment is modified by striking the award of attorney's fees. The amount of interest shall be such as may be computed by the court in accordance with this opinion. In all other respects, the judgment is affirmed.

Inasmuch as the appeal involves only the item of six hundred dollars paid by respondent for replacing the oil mat, the award of attorney's fees, and the interest, and appellant having prevailed on the latter two items, neither party will recover costs in this court.

SCHWELLENBACH, C. J., MALLERY, DONWORTH, and WEAVER, JJ., concur.

October 31, 1952. Petition for rehearing denied.

