[No. 37402. Department Two. October 21, 1965.]

AMERICAN SHEET METAL WORKS, INC., *Respondent*, v. EDWARD R. HAYNES *et al.*, *Appellants*, SPOKANE BANK FOR COOPERATIVES OF SPOKANE, *Defendant.**

*Reported in 407 P.2d 429.

*Frank J. Blade,* for appellants.

*McKevitt, Snyder & Thomas* and *Hart Snyder,* for respondent.

HAMILTON, J.—This is an appeal from a judgment and decree foreclosing a labor and materialman's lien.

In 1961, defendant, Columbia Grain Growers, Inc., desired to erect a concrete grain elevator at Relief, Washington. It engaged the services of Richard L. Hahn, a consulting engineer, to prepare the necessary plans and specifications and to supervise construction. Bids were in turn called for. Codefendant and principal appellant here, Edward R. Haynes, was the successful bidder and became the prime contractor for the project. In the meantime plaintiff, respondent here, American Sheet Metal Works, Inc., had submitted a bid to Mr. Haynes by which it proposed to manufacture, furnish, and install various metal

appurtenances at designated unit prices. Mr. Haynes accepted certain items of respondent's bid and a subcontract, drafted by Mr. Haynes, was executed. By the terms of its bid and the subcontract, respondent agreed to furnish and install the specified items for a total price of $16,341.

Respondent commenced performance on March 17, 1961, when it shipped some of the items it had fabricated. As the job progressed the metal components were installed, and, on July 25, 1961, respondent retired its men from the site believing it had fully performed the obligations of the subcontract.

On July 27, 1961, the engineer, Mr. Hahn, advised Mr. Haynes that he could not accept respondent's performance until certain manually operated, remote controls for the elevator's aeration system were furnished and installed. Discussions between Hahn, Haynes, and agents of respondent ensued, following which respondent manufactured and delivered the controls on August 11, 1961. The controls were installed by Haynes' foreman on August 15th, the cost thereof being charged to respondent.

Controversy arose between Haynes and respondent over the amount due respondent under the subcontract in the light of circumstances developing on the job. Respondent claimed a sum of $943.56 over and above the contract price arising out of certain concrete breaking and patching work performed by its crew in installing the metal appurtenances. This work, respondent asserted, was not contemplated by the subcontract and was specifically excluded in its bid proposal. Haynes, in turn, claimed an offset against the contract price of $2,294.79 assertedly arising out of equipment, materials, and concrete patch work supplied on the job to respondent by Haynes' crew. Haynes contended the concrete breaking and patch work was respondent's contractual responsibility. Deducting from the contract price the $2,294.79 and the sum of $472.43 theretofore paid to respondent, Haynes tendered to respondent a check in the amount of $13,573.78 as payment in full. Respondent rejected the tender and, on November 8, 1961, filed a claim of lien in the amount of $17,284.56.

This action was timely commenced seeking foreclosure of the lien. After trial, at which the respective contentions of the parties were fully explored, the trial court entered findings of fact, conclusions of law, and judgment awarding respondent the sum of $16,346.50, together with interest and attorneys' fees, and directing foreclosure of the lien. The principal amount of the judgment was arrived at by allowing respondent's claim for the concrete patching and breaking work in the amount of $943.56 over the contract price, and crediting against the total thus reached the sum of $472.43 theretofore paid and an offset for equipment, material and work furnished by Haynes in the amount of $465.64.

From this judgment, Mr. Haynes has appealed.

By his first major contention, appellant challenges the efficacy of respondent's lien claim. He asserts that respondent's services on the project ceased as of July 25, 1961; hence, its lien claim, which was filed on November 8, 1961, was not recorded within 90 days as required by RCW 60.04.060.[1] In answer to this assertion, respondent points to the remote controls for the elevator's aeration system which it supplied on August 11th, and which were installed on August 15, 1961, at the insistence of the owner's engineer.

The trial court found that the lien was timely filed.

■ The applicable rule is succinctly stated in *Kirk v. Rohan*, 29 Wn.2d 432, 436, 187 P.2d 607 (1947), as follows:

> The law is well settled in this state that work done or materials furnished under a new and independent contract, entered into after the original contract is completed, cannot be tacked onto the original contract to extend the time for filing a lien under the original contract, for labor performed and materials furnished. However, if the work is done or materials furnished at the request

---

[1]"No lien created by this chapter shall exist, and no action to enforce the same shall be maintained, unless within ninety days from the date of the cessation of the performance of such labor, the furnishing of such materials, or the supplying of such equipment, a claim for such lien shall be filed for record as hereinafter provided, in the office of the county auditor of the county in which the property, or some part thereof to be affected thereby, is situated." RCW 60.04.060.

of the owner to complete the original contract, or to remedy some defect in the work done, then the time for filing the lien would run from the last furnishing of labor and material, provided the work is not done for the purpose of prolonging the time for filing a lien, or renewing the right to file a lien which had been lost by a lapse of time. In short, if the work done or material furnished at the request of the owner, is in furtherance of the original contract, then the time for filing the lien is extended.

In the instant case, it is undisputed that the additional materials were furnished and installed at the instance of the owner's agent and in furtherance of respondent's original contractual obligations. The evidence in nowise suggests that any failure or delay in supplying the materials was prompted or motivated by a desire to extend the time for the filing of a lien. Applying the rule above stated, we find no merit in appellant's contention.

Appellant's next major contention is that the trial court erred in awarding respondent compensation for the claimed additional work of breaking and patching concrete incident to the installation of the sheet metal appurtenances. He predicates this contention upon three grounds or claims of error: (1) That the trial court erroneously considered respondent's bid proposal in reaching the determination that respondent was not contractually obligated to perform the work in question; (2) that the claim for the extra work was not agreed to in writing by appellant as required by the subcontract; and (3) that the trial court erred in admitting and considering written documents pertaining to another similar job undertaken by appellant and respondent.

Appellant's first premise arises out of the circumstance that respondent's bid proposal specifically excluded the concrete work in question as being a part of the bid, whereas the subcontract, as drafted by appellant, omitted such exclusion and incorporated by reference all provisions of the plans and specifications which required the work to be done. Thus, appellant asserts the subcontract consti-

tuted a fully integrated agreement which could not be varied, modified or contradicted by extrinsic evidence.

■ The difficulty with appellant's argument lies in the fact that the items of labor and materials to be supplied by respondent under the terms of the subcontract are designated therein solely by paragraph number, heading and unit price as set forth in the bid proposal. Therefore, to intelligibly correlate the subcontract and the plans and specifications, it is essential to refer to the surrounding circumstances—to the bid proposal—to ascertain the nature and extent of the services respondent was to perform. This being so, the principle enunciated in *Paine-Gallucci, Inc. v. Anderson*, 41 Wn.2d 46, 246 P.2d 1095 (1952) comes into play. In there dealing with an analogous set of facts, we said (p. 50):

> In such a situation, the court may be asked to reform the contract so as to include the omitted provision, or, if it appears to the court that the entire agreement of the parties was made up of more than one written document, that such documents were made as parts of the same transaction, related to the same subject matter and were not inconsistent with each other, all of them may be considered together, and from them a determination made as to all of the terms of the agreement and the intention of the parties.

In the instant case, the bid proposal, the subcontract, and the plans and specifications are consistent with each other, and it is apparent from the manner in which the subcontract is drafted that the parties intended that the three documents be considered together. The trial court, therefore, did not err in considering the bid proposal in reaching the determination as to the contractual obligations of the respective parties.

■ By his second premise, appellant asserts respondent is precluded from recovering for the additional work in question by virtue of a provision in the subcontract requiring that performance of extra work be approved in writing by appellant. Such a condition may, however, be waived by the conduct of the parties. *Davis v. Altose*, 35 Wn.2d 807, 215 P.2d 705 (1950); *Morango v. Phillips*, 33 Wn.2d

351, 205 P.2d 892 (1949); *Eggers v. Luster*, 32 Wn.2d 86, 200 P.2d 520 (1948). There is evidence in the instant case indicating that appellant authorized, permitted, and directed respondent to perform the work in question. In fact, appellant contended the work was respondent's responsibility. The trial court did not err in considering the condition waived.

■ Appellant's third premise springs from the admission into evidence of certain written documents relating to another construction project involving appellant and respondent. Appellant argues that evidence of the manner in which the parties did business on other occasions is irrelevant. Appellant, however, on direct examination by his counsel opened the subject by testifying relative to his experience with respondent on the other project. The gist of his testimony in this respect was that he had encountered no difficulty with respondent concerning the cement work in question on the other project. He cannot, therefore, complain because the trial court permitted respondent on cross-examination to clarify any adverse inference arising from his testimony by introducing the contract documents pertaining to the other job. The trial court did not err in admitting the challenged exhibits.

We conclude, therefore, that the trial court properly determined the principal issue challenged by appellant's second major contention.

By his next major contention appellant maintains that his tender of payment in the amount of $13,573.78, which he also caused to be paid into court together with $22.60 to cover costs, precluded allowance of attorneys' fees, interest, and costs to respondent. We disagree.

■ Appellant's tender was never in the amount of the contract price, the amount claimed due, or the amount finally adjudged to be due. Neither was it unconditional, for it was offered as "payment in full." It, therefore, did not constitute a valid tender which would discharge appellant from his duty of performance. 5A Corbin, Contracts §§ 1234, 1235. Neither did it constitute such an offer of

judgment within the contemplation of RCW 4.84.120[2] as would foreclose allowance of costs, interest, or attorneys' fees. *Rew v. Beneficial Standard Life Ins. Co.*, 41 Wn.2d 577, 250 P.2d 956, 35 A.L.R.2d 891 (1952); *Grant v. Auvil,* 39 Wn.2d 722, 238 P.2d 393 (1951); *Willett v. Davis*, 30 Wn.2d 622, 193 P.2d 321 (1948).

■ Appellant's remaining assignments of error are directed to findings of fact and conclusions of law. The findings of fact are amply supported by the evidence adduced. We will not disturb them. *Boise Cascade Corp. v. Pence,* 64 Wn.2d 798, 394 P.2d 359 (1964). Based upon the findings, the challenged conclusions of law are correct.

The judgment is affirmed.

ROSELLINI, C. J., FINLEY and WEAVER, JJ., and BARNETT, J. Pro Tem., concur.

---

[2]"If the defendant in any action pending, shall at any time deposit with the clerk of the court, for the plaintiff, the amount which he admits to be due, together with all costs that have accrued, and notify the plaintiff thereof, and such plaintiff shall refuse to accept the same in discharge of the action, and shall not afterwards recover a larger amount than that deposited with the clerk, exclusive of interest and cost, he shall pay all costs that may accrue from the time such money was so deposited." RCW 4.84.120.