[No. 95-40219-1.    Division One.    May 4, 1970.]
Panel 2

ROGER BOMAN, *Plaintiff*, v. AUSTIN COMPANY, *Defendant;*
AMERICAN MONORAIL COMPANY, *Respondent*, F. T. CROWE
& COMPANY, INC., *et al.*, *Appellants.*

*Reed, McClure & Moceri, Hugh A. McClure*, and *William R. Hickman*, for appellant.

*Clarke, Clarke, Albertson & Bovingdon* and *George H. Bovingdon*, for respondent.

WILLIAMS, J.—The initial purpose of this action was the recovery of damages for personal injuries sustained in an industrial accident by plaintiff Boman. The issue on appeal is drawn between F. T. Crowe & Company, Inc., appellant,

and American Monorail Company, respondent, over an indemnity provision claimed by respondent to have been incorporated by reference in its subcontract with appellant. The superior court entered a summary judgment obligating appellant to indemnify respondent. From this judgment it appeals. The controversy arose in this way:

The Austin Company (Austin), as prime contractor on construction work for Boeing Company, subcontracted a part to respondent, which in turn subcontracted a part of its work to appellant. Boman, an employee of appellant, was injured on the job as a result of the negligence of an employee of Austin, which he sued. Austin complained over against respondent, praying that it be required to defend the action and pay any judgment that might be entered in favor of Boman. Respondent then tendered the defense to appellant and upon its refusal, joined appellant as a party defendant, asking that it be required to defend the action and also that it indemnify respondent in the event of judgment for Boman.

A summary declaratory judgment was entered in favor of Austin against respondent, requiring it to defend the action and pay any judgment and costs. Following this, the court adjudged appellant responsible for the defense of Boman's action and any judgment which he might gain. Appellant and respondent each then paid $20,000 to Boman, who withdrew from the case. The stipulation of the parties, arranging for the payment to Boman, also provided that appellant would appeal from the part of the summary judgment which made it ultimately liable for Boman's injuries. It was further stipulated that if successful on the appeal, appellant would be reimbursed $20,000 and if unsuccessful, would reimburse respondent a like sum.

Appellant bases its assignments of error on four propositions:

1) There was no indemnity contract between it and respondent.

2) If there was an indemnity agreement, it was unenforceable as being void under the Industrial Insurance Act.

3) If there was an indemnity agreement, it was void under the provisions of RCW 4.24.115, which declares certain indemnity contracts to be void.

4) The summary judgment was improper because there was a material issue of fact.

The relationship between respondent and appellant developed in a series of letters and documents commencing with a letter appellant wrote to respondent on February 12, 1966, as follows:

Gentlemen:

We are enclosing the original, duplicate and tripclate copies of the Austin Company purchase order 6445-1060 and lump-sum subcontract. You are to sign and return the duplicate and Origional to the Austin Company, P. O. Box 70, Auburn, Washington. Any item in the purchase order and or subcontract that you feel objectionable should of course be clarified. You can do this best by letter and if we get a copy of your letter, we would make sure you get a prompt and accurate reply.

You will also find the suppliment to and general conditions surrounding the conditions of the subcontract. This is their standard and in the past we have had little difficult with these conditions, however you of course must satisify yourself concerning these items.

Three copies of The Austin Company for *for* certificates of Insurance are attached. If you prefer you can reply to The Austin Company that F. T. Crowe Co inc will be doing the errection on this project and our insurance certificates are on file with their office. For your information our coverage is adequate for this coverage and the present coverage expires in October 1966.

We trust you find the enclosed to be complete and if we can help with clarifications, we will be willing to do so.

Yours truly,
F. T. Crowe & Co. Inc.
Mechanical Division

. . .

Ward L. Dunbar

The subcontract between Austin and respondent referred to in the letter consisted of two parts: a 6-page purchase

order No. 6445-1060 on an Austin Company form listing materials to be supplied and work to be accomplished, followed by certain typewritten conditions, and a "Lump Sum Contract." One of the typewritten requirements of the purchase order was compliance with article 8 of this "Lump Sum Contract" which obligated respondent to fully comply with all workmen's compensation laws, to indemnify and save Austin harmless in suits for personal injuries and to supply Austin with certificates of insurance showing the coverages specified therein. Another typewritten provision was as follows:

> Should the subcontractor in turn, sublet any portion of the work covered by this order in an amount in excess of $500.00, approval shall be obtained in writing from The Austin Company. *All conditions of this order and Subcontract* will apply to *Subcontractor's subcontractors* who will be required to carry the same amounts of insurance as stipulated and shall show evidence of being so covered before proceeding with the work.

(Italics ours.)

On February 28, 1966, Austin was advised by respondent in writing with a copy to appellant that, among other details, Mr. Jim Wickman had been designated by appellant as its project engineer for the job. This correspondence also called attention to appellant's letter of February 12, 1966, and the comments therein regarding insurance.

On March 9, 1966, Austin granted respondent's request for permission to sublet a part of the work to appellant.

On March 28, 1966, appellant submitted its proposal to respondent as follows:

Spar and Skin Mill Building 17-06
Specification Section 20-D
Receive and install runway rail, electrification, crossover bridge cranes, carriers, hoists, Sick Bay equipment and crane system as listed on Proposal No. 615, dated February 2, 1966 for the sum of......................$135,855.00

Process Building 17-05
Specification Section 20-C
Receive and install crane and monorail systems No. 1 thru 22 as listed on Proposal 615A
for the sum of............................ 40,370.00
Total for both buildings.......................$176,225.00
On April 12, 1966, respondent sent its purchase order as follows:

ITEM OF ERECTION OF EQUIPMENT IN SPAR
AND SKIN MILL BLDG........................$135,855.00
ITEM OF ERECTION OF EQUIPMENT IN PROCESS BLDG. ............................... 40,370.00

. . .

ABOVE IN ACCORD WITH PROPOSAL DATED 3-28-66

April 13, 1966, appellant wrote respondent acknowledging the purchase order and then referred to details not material to this review.

■ Appellant's principal contention is that its contract with respondent was the product of the last three documents, which includes its proposal of March 28, 1966, respondent's purchase order of April 12, 1966, and its acceptance the following day. This would eliminate application of any of the terms of the Austin-Monorail contract to appellant, including the insurance requirements. It is patent that, without more, these documents are meaningless, for they do not describe the nature or extent of the services appellant was to perform. All that can be learned from them is that for the sum of $176,225 appellant will receive and install certain categories of equipment in two buildings. To ascertain the intentions of the parties and the terms of their contractual relationship, appellant's letter of February 12, 1966, and the papers enclosed therein, which include the insurance certificates, the 6-page proposal and "Lump Sum Contract" of Austin, must be examined. As was said in *Paine-Gallucci, Inc. v. Anderson*, 41 Wn.2d 46, 246 P.2d 1095 (1952):

[I]f it appears to the court that the entire agreement of the parties was made up of more than one written document, that such documents were made as parts of the same transaction, related to the same subject matter and

were not inconsistent with each other, all of them may be considered together, and from them a determination made as to all of the terms of the agreement and the intention of the parties.

The trial court determined that the letter of February 12, 1966, with its enclosures, was a part of the written contract between the parties. These writings, which are part of the same transaction, should be interpreted together. *Vance v. Ingram,* 16 Wn.2d 399, 133 P.2d 938 (1943). It is only upon perusal of all of the documents that the terms, conditions and requirements of the relationship between the parties become intelligible. *American Sheet Metal Works, Inc. v. Haynes,* 67 Wn.2d 153, 407 P.2d 429 (1965); *Levinson v. Linderman,* 51 Wn.2d 855, 322 P.2d 863 (1958). The promise to indemnify Austin is one of the express terms of the Austin-Monorail contract which appellant adopted.

■ Although appellant participated in the settlement of the claim of Boman, it contends that the contract of indemnity is void because it would deprive Crowe of a benefit derived from the Industrial Insurance Act, *i.e.,* immunity from Boman's suit. We do not agree. The act specifically permits an election by an employee against a third-party employer. RCW 51.24.010 in part is as follows:

> If the injury to a workman is due to negligence or wrong of another not in the same employ, the injured workman . . . shall elect whether to take under this title or seek a remedy against such other, such election to be in advance of any suit under this section and, if he takes under this title, the cause of action against such other shall be assigned to the state for the benefit of the accident fund and the medical aid fund; . . .

Boman was an employee of appellant, not Austin. Only the employer has immunity, not a third party, even though there is a contractual relationship between the employer and such third party. *Greenleaf v. Puget Sound Bridge & Dredging Co.,* 58 Wn.2d 647, 364 P.2d 796 (1961). And this applies to contracts of indemnity. *Tucci & Sons, Inc. v. Carl T. Madsen, Inc.,* 1 Wn. App. 1035, 467 P.2d 386 (1970).

■ Appellant next contends that the indemnity con-

tract was void by reason of the enactment of RCW 4.24.115. The formation of the contract between appellant and respondent was completed by April 13, 1966. Boman was injured on July 11, 1966, and instituted the action on February 20, 1967. This statute, enacted in 1967, does not have retroactive application. *Tucci & Sons, Inc. v. Carl T. Madsen, Inc., supra.* See also *In re Cascade Fixture Co.,* 8 Wn.2d 263, 111 P.2d 991 (1941).

■ Appellant also argues that the case should not have been disposed of by summary judgment. All of the pertinent documents forming the contract or bearing upon the issue of indemnity were before the court. In its brief, appellant states that there was a question of credibility. It is true that if it was necessary to resolve a genuine issue of credibility, a hearing should have been held. *Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963). However, its counsel on oral argument acknowledged that all documents were genuine. Since they were genuine and not controverted, they could be taken as true by the trial court. *Henry v. St. Regis Paper Co.,* 55 Wn.2d 148, 346 P.2d 692 (1959). Under these circumstances, we are unable to find a genuine issue of fact. The trial court was correct in granting a summary judgment.

The judgment is affirmed.

HOROWITZ, A. C. J., and UTTER, J., concur.

Petition for rehearing denied June 18, 1970.