[No. 4770–9–III.   Division Three.   November 30, 1982.]

LAURENCE M. CHADWICK, *Appellant,* v. NORTHWEST AIRLINES, INC., *Respondent.*

*Joseph A. Blumel III, Backman & Blumel,* and *Sheila Malloy Huber,* for appellant.

*James R. Dickens, William H. Beaver, Jr.,* and *Karr, Tuttle, Koch, Campbell, Mawer & Morrow,* for respondent.

GREEN, J.—The primary issue presented is whether, as a matter of law, Laurence M. Chadwick is foreclosed from bringing this action for discrimination against Northwest Airlines, Inc., (NWA) by reason of a preceding settlement between the parties. We hold that he is and affirm.

Mr. Chadwick's complaint alleges he was employed by NWA from 1960 to 1979. He was granted extended sick leave beginning February 1978. In September of that year, his request to return to work was denied. He alleged the denial was based upon NWA's perception he had a physical handicap. The complaint further states he was allowed to return to work in January 1979, but was again discharged in October of that year because he took 5½ days' sick leave.

He asserted other employees similarly situated were granted a minimum of 12 days' sick leave per year. He alleged the September 1978 refusal to allow him to return to work and the October 1979 discharge were discriminatory in violation of RCW 49.60.180.[1]

NWA answered alleging as an affirmative defense that Mr. Chadwick filed a grievance, through his union, for review of the September 1978 refusal of his request to return to work. That grievance was resolved by a written settlement agreement. NWA agreed to reinstate Mr. Chadwick provided:

> [H]e will be placed on probation for a period of one year from the date of his reinstatement to active payroll status. During such probationary period, he must maintain an acceptable level of productivity and acceptable attendance dependability record as determined by the Company. "Acceptable attendance dependability" in Mr. Chadwick's case shall mean that he cannot be absent, for any reason, on more than five days or portions thereof during such probationary year.

Additionally, Mr. Chadwick agreed he would

> not . . . file or process any unemployment compensation, Workmen's Compensation, *discrimination or other claims of any nature against the Company in any form as a result of his resignation or reinstatement hereunder.* However, he reserves the right to file a grievance in the event he is terminated pursuant to this Agreement, *not to contest the validity of the Agreement, but to determine if it has been fairly and properly applied.*
>
> . . .
>
> 4. It is agreed between the parties that this case will not set a precedent and is without prejudice to the parties' positions on any future similar matters. Neither the [union] nor Mr. Chadwick will disclose or refer to the terms of this settlement agreement nor the discussions which led to it in any future proceedings of any nature.

---

[1]The relevant sections of that statute provide it is an unfair practice for an employer to discharge, bar any person from employment, or discriminate against any person in compensation or in other terms or conditions of employment because of such person's physical handicap.

(Italics ours.) NWA further alleged Mr. Chadwick was terminated in October 1979 because he breached the agreement by being absent more than 5 days during the probationary year. This termination was arbitrated and resulted in a finding the settlement agreement had been properly applied.

NWA moved for summary judgment asserting the settlement agreement barred Mr. Chadwick's claim for discrimination. Mr. Chadwick contends the court erred in granting this motion. His primary contention is that the agreement violates the public policy favoring the elimination of discrimination against the physically handicapped. RCW 49.60.030. He asserts the agreement is contrary to this policy because it not only (1) required him to waive his claim for discrimination arising from NWA's refusal in September 1978 to allow him to return to work, but also (2) conditioned his reemployment on terms different from other employees. Therefore, he urges the agreement be declared void.

It is well established settlements are strongly favored and are to be encouraged. *Haller v. Wallis,* 89 Wn.2d 539, 545, 573 P.2d 1302 (1978); *Aust v. Bridges,* 17 Wn. App. 554, 564 P.2d 1167 (1977). We find no authority for adopting a rule that per se voids a settlement simply because it involves a possible discrimination claim. In fact, federal cases interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1976), which are applicable for guidance,[2] consistently favor settlement and conciliation of discrimination claims. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 39 L. Ed. 2d 147, 94 S. Ct. 1011, 1021 (1974) (dicta); *Strozier v. General Motors Corp.,* 635 F.2d 424 (5th Cir. 1981); *United States v. Allegheny–Ludlum Indus., Inc.,* 517 F.2d 826 (5th Cir. 1975). In *United States v. Allegheny–Ludlum Indus., Inc., supra,* the court extensively reviewed the policy of that statute. It concluded at

---

[2]*See Rose v. Hanna Mining Co.,* 94 Wn.2d 307, 616 P.2d 1229 (1980); *Fahn v. Cowlitz Cy.,* 93 Wn.2d 368, 610 P.2d 857 (1980).

page 846:

> [I]t is quite apparent that the basic philosophy of these statutory provisions is that *voluntary compliance is preferable to court action and that efforts should be made to resolve these employment rights by conciliation both before and after court action.*

Addressing a contention similar to the one urged here, the court refused to declare a settlement agreement unenforceable as a matter of public policy. It reasoned at pages 858–59:

> Very frankly, we cannot conceive of how any employment discrimination dispute could ever be resolved outside, or indeed inside, the courtroom, if defendants were forbidden to obtain binding, negotiated settlements. No defendant would ever deliver money, promises, or any other consideration—not even a peppercorn—except after entry of a contested, final court order, and even this, on appellants' reasoning, might not end the matter.

Mr. Chadwick was reinstated without having to resort to litigation. There is no policy against his waiving a possible discrimination claim in exchange.

Neither does the fact that Mr. Chadwick was reinstated on terms different from other employees during the probationary period lead to the conclusion the agreement is invalid. As was pointed out in *Strozier v. General Motors Corp., supra* at 425–26:

> A settlement is a compromise voluntarily agreed to by the parties. Each party generally accepts something less than that to which he believes he is entitled based on a decision that the compromise is more advantageous to him than the sum of the risks and benefits involved in pursuing the claim. . . .
>
> . . .
>
> . . . [The employee] cannot now request additional monetary relief merely because he is dissatisfied with the amount he voluntarily agreed to accept in the settlement as compensation for his claims.

*See also United States v. Allegheny–Ludlum Indus., Inc., supra* at 858.

Mr. Chadwick urges, however, that the agreement should

nonetheless be declared invalid because it required him to waive his *prospective* right to file suit against NWA based on his October 1979 discharge, which he alleges was, at the time the agreement was signed, a future discriminatory act.

A release generally extends to all matters within the parties' contemplation at the time it is executed. *Bakamus v. Albert*, 1 Wn.2d 241, 95 P.2d 767 (1939).

> [An] employee may release . . . claims aris[ing] from antecedent discriminatory events, acts, patterns, or practices, or the "continuing" or "future" effects thereof so long as such effects are causally rooted—in origin, logic, and factual experience—in discriminatory acts or practices which antedate the execution of the release . . .

*United States v. Allegheny–Ludlum Indus., Inc., supra* at 853.

The settlement agreement here required Mr. Chadwick to release any discrimination claim arising *"as a result of"* his initial termination *"or reinstatement hereunder."* The October 1979 discharge was the result of Mr. Chadwick's failure to comply with the terms of probation and was clearly contemplated by the parties at the time of contracting. He cannot now invalidate the agreement because NWA enforced it.

Mr. Chadwick contends even if the settlement is not declared invalid, summary judgment was erroneously granted because a question of fact exists whether the settlement agreement was knowingly and voluntarily executed. In his affidavit opposing the motion, he stated:

> At the time I signed the agreement, I was not aware of any legal requirements that would have forced the company to reasonably accommodate me and my injury; I was not aware of any claim I might have for discrimination based on presence of a physical handicap; . . . and I did not believe I had any alternative to signing the agreement. I had been informed by my Union that the agreement was the best alternative and, upon the Union's encouragement I signed the agreement.
>
> I do not believe that my signature on the agreement was voluntary or made with an understanding of the state laws against discrimination.

Assuming this affidavit is true, it does not create a genuine issue of material fact.

Mr. Chadwick's assertion is essentially that he did not fully understand the legal effect of the agreement. That fact, however, does not support the conclusion it was not voluntarily executed. *Schwieger v. Harry W. Robbins & Co.,* 48 Wn.2d 22, 290 P.2d 984 (1955). A release is governed by contract law which defines voluntary as signing an instrument of one's own free will, knowing that one is signing the agreement. *Compare In re Adoption of Baby Girl K.,* 26 Wn. App. 897, 904–05, 615 P.2d 1310 (1980), *with State v. Butler,* 17 Wn. App. 666, 564 P.2d 828 (1977). Unless there is a showing of fraud, deceit, coercion, mutual mistake or mental incompetency at the time the instrument is executed, one having the opportunity to read it is deemed by law to have understood its contents and cannot claim to have been misled thereby. *National Bank v. Equity Investors,* 81 Wn.2d 886, 912–13, 506 P.2d 20 (1973); *Pierce v. Lake Stevens Sch. Dist. 4,* 84 Wn.2d 772, 788, 529 P.2d 810 (1974). There is no claim of misconduct on the part of NWA. Therefore, summary judgment was properly granted.

Mr. Chadwick also argues this case should not have been disposed of by summary judgment because the material submitted by NWA in support of the motion did not comply with CR 56(e).[3] He asserts the facts averred in the affidavit of NWA's attorney were based upon a review of NWA's personnel file, not upon the attorney's personal knowledge, and the documents appended to its brief were not sworn or certified copies as required by that rule. He further argues the attorney was not qualified as a custodian of the records to testify regarding those files. Therefore, he

---

[3]CR 56(e) provides in part:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."

argues the motion should fail. We disagree.

The disputed material has no bearing upon the issue here of whether the settlement agreement bars this action as a matter of law. That determination can be made from the uncontroverted allegations in the pleadings. Mr. Chadwick does not deny he entered into the agreement; in fact, he included it as part of his material in opposition to the motion. Even accepting Mr. Chadwick's affidavit and supporting documents as the established facts of this case, we find no genuine issue of fact is presented. *See Yeats v. Estate of Yeats*, 90 Wn.2d 201, 203, 580 P.2d 617 (1978); *Stringfellow v. Stringfellow*, 53 Wn.2d 639, 641, 335 P.2d 825 (1959); *Portland Elec. & Plumbing Co. v. Vancouver*, 29 Wn. App. 292, 294, 627 P.2d 1350 (1981); *Boman v. Austin Co.*, 2 Wn. App. 581, 587, 469 P.2d 199 (1970).[4]

Affirmed.

ROE, A.C.J., and MUNSON, J., concur.

Reconsideration denied January 11, 1983.

Review granted by Supreme Court March 11, 1983.

---

[4]We note NWA submitted a second affidavit of NWA's corporate secretary/counsel, which stated the facts averred by NWA's attorney are true and the appended documents are true and correct copies of those in NWA's personnel file. Although this affidavit was stricken by the court as being repetitive, it corrected the deficiency in the former affidavit and, therefore, should not have been stricken. In reviewing the motion for summary judgment, this court is in the same position as the trial court. *Highline Sch. Dist. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976); *Deacy v. College Life Ins. Co. of Am.*, 25 Wn. App. 419, 422, 607 P.2d 1239 (1980). Therefore, we may properly consider the stricken affidavit.