**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| BRIANNA GARZA and MARIO GARZA, wife and husband , | DIVISION ONE |
| Respondents, | No. 83377-4-I |
| v. | PUBLISHED OPINION |
| MATTHEW PERRY, an individual, | |
| Defendant. | |
| and | |
| AMERICAN FAMILY INSURANCE COMPANY, | |
| Appellant Intervenor. | |

DWYER, J. — Brianna Garza and her spouse Mario Garza filed a lawsuit against Matthew Perry premised on injuries she sustained in an automobile collision. Two months prior to the scheduled trial date, the Garzas and Perry reached a settlement agreement by which the Garzas obtained a covenant judgment against Perry in the amount of $2.5 million. Perry's insurer, American Family Insurance Company (AmFam), intervened in the action in an attempt to nullify the settlement agreement based on the language of a mutual release clause contained within the written memorialization of the agreement. The trial court denied AmFam's request and found that the settlement agreement was reasonable. Finding no error, we affirm.

No. 83377-4-I/2

I

On March 27, 2018, Matthew Perry caused an automobile collision that injured Brianna Garza. Perry was solely at fault for the collision. Brianna[1] suffered extensive injuries as a result of the collision, including a traumatic brain injury (TBI). The TBI caused a complete personality change in Brianna: she now experiences memory problems, cannot multitask, becomes unexpectedly emotional, and is frequently anxious or irritable. Her personal and professional relationships have suffered as a result.

The Garzas filed suit against Perry on April 10, 2019. The Garzas extended multiple offers to AmFam to settle the matter, but AmFam declined them all.

After almost two years of failed settlement attempts, the Garzas approached Perry with an offer to settle in exchange for an assignment of rights. Both AmFam and Tyson & Mendes, the law firm it had appointed to represent Perry, advised Perry that he might wish to seek independent legal advice concerning the offer. Perry did so, hiring attorney Patrick Trudell to represent him.

On December 23, 2020, Perry and the Garzas entered into a settlement, agreeing to a covenant judgment in the amount of $2.5 million. AmFam was not a party to the settlement and played no role in its negotiation.

Paragraph 20 of the written memorialization of the settlement agreement

---

[1] Because Brianna Garza and Mario Garza share the same last name, we refer to them individually by using their first names. We intend no disrespect.

2

reads as follows:

> This Settlement Agreement shall be provided to Defendant's insurers for review so that Defendant's insurers may consider whether to fully protect Defendant from the claims of plaintiff for injuries and damages Plaintiffs sustained in the crash at issue. If, within 30 days from the date that this Settlement Agreement is signed, Defendant's insurers provide written proof to Defendant, and to Plaintiffs' attorneys, that Defendant's insurers will pay all injuries and damages sustained by Plaintiffs in the crash at issue for which defendant may be found liable, and to fully indemnify defendant for any final judgment which may be entered against him for these claims, then the parties mutually release each other from all terms and conditions of this Settlement Agreement and all benefits and obligations of both parties to this agreement, including refund by Plaintiffs to Defendant of any payments made by Defendant pursuant to this Settlement Agreement.

The parties filed a notice of settlement the same day, striking the jury trial scheduled for February 8, 2021. Brian Sullivan, counsel for the Garzas, sent an e-mail to Tyson & Mendes notifying the firm that it had reached a settlement with Perry. A copy of the settlement agreement was attached to the e-mail. In the e-mail, Sullivan asked Tyson & Mendes to relay one final settlement offer to AmFam:

> Please tell American Family the following: if we are forced to litigate this matter further, the floor value of this case will be $2.5M. With the assigned bad faith, consumer protection act, and other claims, the final value is much higher. My client wants resolution and hereby makes the following offer to American Family: she will agree to dismiss all potential claims arising from the crash, as well as her claims pursuant to the settlement and covenant judgment, for $2,500,000 if paid in full to my office within 10 business days (4:30 PM Pacific time on January 8, 2021).

On December 31, 2020, AmFam sent a letter to Sullivan and Trudell, informing them that it "agrees that it will waive the applicable limits of $250,000 so that the matter can proceed to trial. Should a verdict be returned in excess of

3

$250,000 American Family will fully indemnify Mr. Perry and pay the full judgment." In this letter, AmFam further stated, "We understand by waiving the limits in this manner, the parties to the Settlement Agreement have now mutually released each other from all terms and conditions of the Settlement Agreement and all benefits and obligations of both parties to the Settlement Agreement."

Sullivan responded to AmFam's letter, informing AmFam that its interpretation of the settlement agreement was at odds with the parties' intent. On January 14, 2021, the parties to the settlement agreement, the Garzas and Perry, executed a document entitled "Supplement to 12/23/2020 Settlement Agreement." The document reads in relevant part as follows:

14. The parties' intent for paragraph 20 was not for American Family to force a trial and formal judgment to be entered against Mr. Perry, but instead for the Court to approve the reasonableness of the Settlement Agreement with this Supplemental Agreement incorporated, for American Family to promptly pay the approved settlement, with the agreement to pay the approved settlement the triggering event to release further actions by the parties, such as of the assigned claims for bad faith and the required cooperation of Mr. Perry in that subsequent action.

15. The parties did not anticipate the issue that has arisen as a result of the drafting of Paragraph 20, and now acknowledge that Paragraph 20 of the Settlement Agreement has created confusion and by its plain language is subject to interpretation in a manner at odds with the intent of the parties.

16. Therefore, the parties agree, pursuant to Paragraph 21 of the Settlement Agreement that the contents (and any releases) of Paragraph 20 from the Settlement Agreement are hereby stricken from the December 23, 2020 Settlement Agreement, and replaced as follows:

The Settlement Agreement shall be provided to Defendant's insurers for review so that Defendant's insurers may consider whether to fully protect

4

> Defendant from the claims of Plaintiffs for injuries and damages Plaintiffs sustained in the crash at issue. Plaintiffs will be noting a reasonableness hearing to approve the Settlement Agreement with the Superior Court. If, within 10 business days of the Court's Order on the reasonableness hearing, American Family pays the approved amount to Plaintiffs' Counsel, in trust for the Garza Family, then the parties agree to mutually release each other from all claims and to end all claims and litigation over the March 27, 2018 crash forever.

On January 11, 2021, AmFam moved to intervene in the lawsuit between the Garzas and Perry. The trial court granted the motion.

On January 22, 2021, the Garzas filed a "Motion for Court Approval of the Reasonableness of Settlement." The Garzas requested that the motion be heard on January 28, 2021.

Three days later, AmFam filed a motion to either strike or continue the hearing on the Garzas' motion. In its motion, AmFam indicated that it would be filing a motion "to enforce the contract between AmFam, the Garzas, and Mr. Perry that formed when AmFam unambiguously accepted the terms and conditions of Paragraph 20." AmFam argued that a continuance of the reasonableness hearing would prevent the parties from incurring expenses in preparing for what could be a moot issue and would allow it time to conduct necessary discovery. AmFam further argued that responding to the reasonableness motion would require it to disclose Tyson & Mendes' litigation strategy, which, if the trial court granted AmFam's motion to enforce and returned the matter to the trial calendar, would provide the Garzas with an unfair advantage in the ongoing proceedings.

AmFam also filed a motion for partial summary judgment, asking the trial court to enforce the original paragraph 20 of the settlement agreement and reset the matter for trial. This motion was set to be heard on February 23, 2021.

On January 29, 2021, Judge David Kurtz of the Snohomish County Superior Court struck the reasonableness hearing from the calendar. In his order, Judge Kurtz deemed the reasonableness hearing "premature" in light of the multiple competing motions filed by the Garzas and AmFam. Judge Kurtz did not set a new date for the reasonableness hearing.

Although Judge Kurtz had already stricken the reasonableness hearing, AmFam nonetheless filed a reply in support of its motion to strike on February 1, 2021. Therein, AmFam reiterated its request to authorize a period of discovery and asked the court to schedule the reasonableness hearing for no earlier than 45 days after the court's decision on its motion for partial summary judgment.

On February 2, 2021, Judge Richard Okrent issued a ruling resetting the reasonableness hearing for March 2, 2021. Judge Okrent's order reads in relevant part as follows:

> 2. Having reviewed the filings of the parties, the Court concludes that the reasonableness hearing should be continued 30 days. However, there will be no further continuances without good cause shown.
> 3. The motion to strike pleadings is denied.
> 4. The reasonableness hearing shall take place before Judge Okrent on March 2nd at 3:00 pm. If that date and time is unavailable for the parties, they may contact Judge Okrent's law clerk to reschedule.

AmFam subsequently filed a notice of disqualification for Judge Okrent.

On March 1, 2021, Judge Okrent entered an order denying AmFam's request to

6

disqualify him.  On March 30, 2021, AmFam filed a notice for discretionary

review, asking this court to accept review of its proposed interlocutory appeal of

Judge Okrent's order refusing to disqualify himself.  On April 16, 2021, our

commissioner entered a ruling denying discretionary review.  The commissioner

so ruled because "it appears Judge Okrent did more than resetting the

reasonableness hearing."

On April 20, 2021, the trial court entered an order denying AmFam's

motion for partial summary judgment.

The trial court conducted a three-day reasonableness hearing starting on

June 23, 2021.[2]  The trial court heard testimony from multiple lay and expert

witnesses concerning the underlying dispute and the possible outcome were the

matter tried to a jury.  Following the hearing, the trial court found that the $2.5

million settlement was reasonable.[3]

II

AmFam first asserts that Judge Okrent erred by not recusing himself after

AmFam filed a notice of disqualification.  We disagree.

Disqualification of a single judge without a showing of prejudice is a right

granted to parties by statute.  Harbor Enters., Inc. v. Gunnar Gudjonsson, 116

Wn.2d 283, 285, 803 P.2d 798 (1991); see RCW 4.12.050.  We review issues of

statutory construction de novo.  Pub. Util. Dist. No. 2 of Pac. County v. Comcast

---

[2] The reasonableness hearing was continued due to discovery disputes between the parties.

[3] The Garzas ask us to take judicial notice of a complaint filed by AmFam against the Garzas and Perry in federal court.  Because the existence of outside litigation is not relevant to our decision on appeal, we decline to do so.

No. 83377-4-I/8

of Wash. IV, Inc., 8 Wn. App. 2d 418, 449, 438 P.3d 1212 (2019).

RCW 4.12.050(1)(a) provides that any party may disqualify one judge from taking action in a case so long as the notice of disqualification has been "filed and called to the attention of the judge before the judge has made any discretionary ruling in the case." The limited exceptions to this rule are enumerated in the statute:

> Even though they may involve discretion, the following actions by a judge do not cause the loss of the right to file a notice of disqualification against that judge: Arranging the calendar, setting a date for a hearing or trial, ruling on an agreed continuance, issuing an arrest warrant, presiding over criminal preliminary proceedings under CrR 3.2.1, arraigning the accused, fixing bail, and presiding over juvenile detention and release hearings under JuCR 7.3 and 7.4.

RCW 4.12.050(2). If the notice of disqualification is timely filed, the judge must recuse from the case. Godfrey v. Ste. Michelle Wine Ests. Ltd., 194 Wn.2d 957, 961-62, 453 P.3d 992 (2019).

On February 2, 2021, Judge Okrent issued an order setting the reasonableness hearing, previously stricken by Judge Kurtz, for March 2. AmFam characterizes this order as an order "setting a date for a hearing" that did not cause the loss of its right to disqualify Judge Okrent. However, it is not the form of the motion that determines whether the judge's ruling thereon falls within the statutory exemption; rather, it is the "substance and impact" of the motion that controls. State v. Lile, 188 Wn.2d 766, 778, 398 P.3d 1052 (2017). Reviewing the totality of the matters considered and resolved in Judge Okrent's order, it is apparent that the order did far more than simply set a date for a hearing.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

In its "Motion to Strike or Continue Plaintiffs' Motion for Court Approval of Reasonableness of Settlement," AmFam argued that the reasonableness hearing should not take place on the scheduled date because it intended to file a motion for summary judgment, which, if granted, would unwind the settlement agreement and moot the reasonableness determination. AmFam also argued that if it had to litigate the reasonableness of the settlement first, it would have to divulge its litigation strategy, which in turn would be highly prejudicial if its summary judgment motion were granted and the matter proceeded to trial. Further, AmFam requested that the reasonableness hearing be set for no sooner than 45 days from the date of the order because it wished to conduct discovery. Thus, AmFam was not merely asking the trial court to pick a new date on the calendar. Instead, to impose order on the sprawling set of contradictory requests for relief and related matters it was necessary for Judge Okrent to familiarize himself with all of the various arguments and issues pending before the court and prioritize the various issues, including whether the parties were entitled to discovery and whether any motion needed to be ruled on in the order.

That Judge Okrent's order was not merely a scheduling order is further evidenced by AmFam's reply in support of its motion. On January 29, Judge Kurtz entered an order striking the scheduled date for the reasonableness hearing. This was the relief that AmFam sought in its initial motion, which should have ended the dispute. Instead, while acknowledging that the reasonableness hearing had already been stricken, AmFam filed a reply asking the trial court to hear its summary judgment motion before any other proceedings and to grant it a

9

No. 83377-4-I/10

minimum 45-day period in which to conduct discovery.

Judge Okrent's ruling on AmFam's motion thus required him to decide whether the reasonableness hearing should occur before or after the summary judgment motion scheduled for February 23, 2021, and decide if AmFam should be allowed to conduct discovery and, if so, how much time AmFam should be allowed to do so. These issues, in turn, required consideration of what rights AmFam had as an intervenor in the action. The decision rendered bears little resemblance to the typical order setting a hearing date, which requires only that the court check its schedule and verify the availability of the parties. As it required him to prioritize the issues and assess the rights of an intervening party, Judge Okrent's order was not a mere calendaring order of the type exempted from RCW 4.12.050. Accordingly, Judge Okrent did not err by declining to recuse himself.

III

AmFam next asserts that the trial court erred by denying its motion for summary judgment and declining to enforce paragraph 20 of the settlement agreement entered into by Garza and Perry and to reset the matter for trial.[4] This is so, AmFam asserts, because when it was notified of the settlement agreement, paragraph 20 was intended as a contractual offer to AmFam. AmFam contends that it subsequently accepted that offer, thereby creating a

_____

[4] Because Garza and Perry had stricken the jury trial on reaching a settlement, AmFam correctly conceded at oral argument that it would have been left to the trial court's discretion whether AmFam would have received a jury or a bench trial. Mount Vernon Dodge, Inc. v. Seattle-First Nat'l Bank, 18 Wn. App. 569, 581, 570 P.2d 702 (1977).

10

contract between it and the settling parties. We disagree.

We review a trial court's order on summary judgment de novo. Boyd v. Sunflower Props., LLC, 197 Wn. App. 137, 142, 389 P.3d 626 (2016). If reasonable minds cannot differ as to whether language constitutes an offer, judgment is appropriate as a matter of law. See Swanson v. Liquid Air Corp., 118 Wn.2d 512, 522, 826 P.2d 664 (1992). Ordinarily, the legal effect of a document presents a question of law. Yeats v. Est. of Yeats, 90 Wn.2d 201, 204, 580 P.2d 617 (1978).

A

A covenant judgment is a form of settlement agreement that transfers the right of action against the defendant's insurer in exchange for entry of judgment against the defendant and the plaintiff's promise not to enforce that judgment against the defendant's assets. Bird v. Best Plumbing Grp., LLC, 175 Wn.2d 756, 764-65, 287 P.3d 551 (2012) (citing Besel v. Viking Ins. Co. of Wis., 146 Wn.2d 730, 736-38, 49 P.3d 887 (2002)). A covenant judgment is binding on the insurer in the sense that the amount awarded in the covenant judgment is the presumptive measure of damages in any subsequent bad faith action against the insurer. Bird, 175 Wn.2d at 765.

A covenant judgment creates a presumptive amount of damages not because it forms a contract with the insured, but because a tortfeasor should not be able to benefit from its wrongdoing. Greer v. Nw. Nat'l Ins. Co., 109 Wn.2d 191, 204, 743 P.2d 1244 (1987). Covenant judgments are not entered for the benefit of the insurer and are not intended to release the insurer from any

11

contractual obligations it owes to the insured.  Kagele v. Aetna Life & Cas. Co., 40 Wn. App. 194, 198, 698 P.2d 90 (1985).  Indeed, the purpose of covenant judgments is to protect the insured from the bad faith of his insurer, not to form an agreement with the insurer.  Thus, the mere existence of a covenant judgment does not form a contract between the injured party and the tortfeasor's insurer.

B

Nonetheless, AmFam avers that a contract was formed between it and the Garzas and Perry because paragraph 20 of the written memorialization of the settlement agreement constituted an offer that AmFam accepted by issuing a "blue sky" letter to Perry assuring him that it would pay any judgment entered against him that resulted from a trial even if the amount of the judgment exceeded the policy limits.  We disagree.

For a contract to be formed, there must be both an offer and acceptance.  Weiss v. Lonnquist, 153 Wn. App. 502, 511, 224 P.3d 787 (2009).  "An offer consists of a promise to render a stated performance in exchange for a return promise being given."  Pac. Cascade Corp. v. Nimmer, 25 Wn. App. 552, 556, 608 P.2d 266 (1980).  "[A]n intention to do a thing is not a promise to do it."  Meissner v. Simpson Timber Co., 69 Wn.2d 949, 957, 421 P.2d 674 (1966).  As we have previously explained:

> "If from a promise, or manifestation of intention, or from the circumstances existing at the time, the person to whom the promise or manifestation is addressed knows or has reason to know that the person making it does not intend it as an expression of his fixed purpose until he has given a *further expression of assent*, he has not made an offer."

No. 83377-4-I/13

Nimmer, 25 Wn. App. at 557 (quoting RESTATEMENT OF CONTRACTS § 25 (1932)).

Contracts—and by extension, purported offers—are to be read as a whole. Bellevue Square, LLC v. Whole Foods Mkt. Pac. Nw., Inc., 6 Wn. App. 2d 709, 717, 432 P.3d 426 (2018). AmFam reads paragraph 20 in isolation, as if it were the only written words at issue. However, the Garzas did not send paragraph 20 to AmFam in isolation. Rather, as required by law, the Garzas sent AmFam a copy of the entire written settlement agreement between them and Perry.[5]

The written agreement, when read as a whole, makes it clear that it was intended to memorialize the agreement made solely between the Garzas and Perry. The first page of the document defines the parties as Brianna Garza, Mario Garza, and Matthew Perry. The settlement agreement also lays out its purposes and not once does it mention any intent to contract with or provide a benefit to the insurer:

> The purposes of this Settlement Agreement are to (a) provide for a settlement with prompt payment of the applicable insurance proceeds and other sums to Plaintiffs for their medical, rehabilitation and other needs, and to assure adequate compensation for the harm they have sustained; (b) to protect Defendant's personal savings, property, assets, credit and reputation from further judgments and verdicts in favor of Plaintiff; (c) to afford protection to Defendant from having to make payments and execution on judgments in excess of the insurance limits; and (d) to minimize the costs, delays, stress and uncertainties of continued litigation, to Defendant, his business interests, and to Defendant's family, and to Plaintiffs.

---

[5] The Garzas were statutorily required to provide AmFam with a copy of the written settlement agreement. See RCW 4.22.060(1).

13

The only mentions of Perry's insurer outside of paragraph 20 concern the parties' intent to provide notice of the settlement and reasonableness hearing to the insurer.

Furthermore, the Garzas sent a copy of the written settlement agreement to AmFam as an attachment to an e-mail. Documents that are part of the same transaction or conveyance should be interpreted together. Boman v. Austin Co., 2 Wn. App. 581, 586, 469 P.2d 199 (1970). The body of the e-mail did, in fact, make an offer to AmFam, but not the offer that AmFam claims it accepted. Rather, the language of the offer was as follows:

> Please tell American Family the following: if we are forced to litigate this matter further, the floor value of this case will be $2.5M. With the assigned bad faith, consumer protection act, and other claims, the final value is much higher. My client wants resolution and hereby *makes the following offer to American Family*: she will agree to dismiss all potential claims arising from the crash, as well as her claims pursuant to the settlement and covenant judgment, for $2,500,000 if paid in full to my office within 10 business days (4:30 PM Pacific time on January 8, 2021).

(Emphasis added.) Thus, the Garzas' intent was clear: they intended to release the covenant judgment only if AmFam paid the Garzas $2.5 million, not if it made a promise to Perry to indemnify a jury verdict. Thus, read in context of all the writings supplied to AmFam in that e-mail and attachment, paragraph 20 plainly did not constitute an offer to AmFam that was capable of foisting on the Garzas and Perry an unwanted independent contract.

Even were we to read paragraph 20 in isolation (as AmFam urges us to do), those words would still not constitute an offer to AmFam. Paragraph 20 provides that if, within 30 days, AmFam provided written proof to the parties of its

14

intent "to fully indemnify defendant for any final judgment which may be entered against him for these claims, then the parties mutually release each other from all terms and conditions of this Settlement Agreement." Notably, paragraph 20 does not say anything about resetting the matter for trial or reinstituting the present litigation. Nor does the paragraph promise anything to AmFam other than to provide it with the copy of the agreement as statutorily required. This paragraph of the agreement was simply a statement by the parties expressing their understanding of what would happen should it not be necessary to pursue a bad faith claim against AmFam. That AmFam, a stranger to the agreement, might ascribe a different meaning to it is wholly irrelevant.[6]

C

If there was any confusion as to the purpose and effect of paragraph 20, that was cleared up by the parties in their "Supplement to 12/23/2020 Settlement Agreement." AmFam characterizes the "Supplement" as an attempt by the parties to create a new contract to escape their obligations to AmFam. This argument is without merit.

Contracts are not reformed; writings are. A & A Sign Co. v. Maughan, 419 F.2d 1152, 1156 (9th Cir. 1969) ("Reformation is an appropriate remedy to

---

[6] Furthermore, even if paragraph 20 did constitute an offer, AmFam did not accept it. To form a valid contract, the terms of acceptance must be identical to the offer. Sea-Van Invs. Assocs. v. Hamilton, 125 Wn.2d 120, 126, 881 P.2d 1035 (1994). An "acceptance" that is conditional or otherwise alters the terms of the offer is considered a counter-offer, and no contract is formed unless the original offeror accepts the altered terms. Sea-Van, 125 Wn.2d at 126. Here, the letter issued by AmFam following its receipt of the settlement agreement qualified its purported acceptance by stating that "[t]he agreement to accept Paragraph 20 and waive the $250,000 limits of the Policy does not otherwise waive any duty or right under the Policy by Mr. Perry or American Family." Because paragraph 20 contained no such limitation, AmFam's letter was, at most, a counter-offer.

correct a written instrument when the words it contains do not express the meaning the parties agreed upon."). A written instrument may be reformed when, by mutual mistake of the parties, the writing fails to correctly express the parties' agreement. John Hancock Mut. Life Ins. Co. v. Agnew, 1 Wn.2d 165, 176, 95 P.2d 386 (1939); accord W. Coast Pizza Co. v. United Nat'l Ins. Co., 166 Wn. App. 33, 41, 271 P.3d 894 (2011). Although reformation is most commonly thought of as an equitable remedy awardable by the court, the parties to a contract may voluntarily reform a written instrument to reflect their agreement without resort to litigation. See St. Paul Mercury Ins. Co. v. Foster, 268 F. Supp. 2d 1035, 1043 (C.D. Ill. 2003) (collecting cases enforcing voluntary reformations).

This is precisely what occurred here.[7] The "supplement" executed by the Garzas and Perry acknowledges that the mutual agreement of the parties was to fully and finally end the litigation between them and that they had unartfully included language in the writing memorializing their agreement that could be read as expressing a contrary intent. The Garzas and Perry then struck the writing's paragraph 20 and replaced it with a paragraph that more accurately reflected their actual agreement, specifying that if AmFam agreed to pay the judgment deemed reasonable by the court, they would mutually release one another from all claims. This was a valid reformation executed by the parties to alter the writing (not to alter their contract), and is fully enforceable. As such, it

---

[7] We include this explanation because our Supreme Court has made clear that a court's "obligation to follow the law remains the same regardless of the arguments raised by the parties before it." State v. Quismundo, 164 Wn.2d 499, 505-06, 192 P.3d 342 (2008).

did not negate any purported offer to AmFam. Accordingly, the trial court did not err by denying AmFam's motion for summary judgment.

IV

AmFam last argues that the trial court abused its discretion by finding the covenant judgment agreed to between the Garzas and Perry to be reasonable and not the product of collusion. Again, we disagree.

Settlement contracts including covenant judgments entered into by the parties to a suit are subject to a determination of reasonableness by the trial court. RCW 4.22.060(1); Bird, 175 Wn.2d at 767. The burden of proving reasonableness is on the settling parties. RCW 4.22.060(1); Chaussee v. Md. Cas. Co., 60 Wn. App. 504, 510, 803 P.2d 1339, 812 P.2d 487 (1991). Once the court has determined that the covenant judgment is reasonable, the burden shifts to the insurer to show that it was a product of fraud or collusion. Besel, 146 Wn.2d at 739.

Courts determine whether a covenant judgment is reasonable by examining what are known as the Glover/Chaussee factors. Those factors are as follows:

> "'[T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released.'"

Besel, 146 Wn.2d at 738 (alteration in original) (quoting Glover v. Tacoma Gen. Hosp., 98 Wn.2d 708, 717-18, 658 P.2d 1230 (1983)). "No one factor controls

17

and the trial court has the discretion to weigh each case individually."

Chaussee, 60 Wn. App. at 512. "A trial court's finding of reasonableness is a

factual determination that will not be disturbed on appeal when supported by

substantial evidence." Brewer v. Fibreboard Corp., 127 Wn.2d 512, 524, 901

P.2d 297 (1995). Substantial evidence is defined as "that 'quantum of evidence

sufficient to persuade a rational fair-minded person the premise is true.'" In re

Dependency of A.M.F., 23 Wn. App. 2d 135, 141, 514 P.3d 755 (2022) (quoting

Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)).

Here, AmFam challenges the trial court's findings on only two of the

Glover/Chaussee factors: the releasing person's damages and the lack of bad

faith, collusion, or fraud.

First, AmFam asserts that the trial court's finding on the releasing person's

damages is not supported by the evidence because Brianna's damages do not

justify an award of $2.5 million. In support of this argument, AmFam advances

two contentions: first, that the trial court's statements at the hearing indicate that

there was no basis for the $2.5 million settlement amount and, second, that the

Garzas' litigation expert's testimony was not credible.

AmFam's first argument fails because a trial court's oral statements,

unless explicitly incorporated into its factual findings or order, are "no more than

a verbal expression of his informal opinion at that time" and have "no final or

binding effect." Ferree v. Doric Co., 62 Wn.2d 561, 566-67, 383 P.2d 900 (1963).

Any statement made by the trial court during its oral ruling "when at variance with

the findings, cannot be used to impeach the findings or judgment." Ferree, 62

18

No. 83377-4-I/19

Wn.2d at 567; see also Thompson v. Thompson, 9 Wn. App. 930, 934, 515 P.2d 1004 (1973). Here, the trial court's order did not incorporate any of its utterances. Thus, we assign no significance to the trial court's utterances at the reasonableness hearing.

AmFam's second argument also fails. This is so because we do not reassess the credibility of trial court witnesses. Substantial evidence review requires us to view the evidence in the light most favorable to the prevailing party, "'a process that necessarily entails acceptance of the factfinder's views regarding the credibility of witnesses.'" Freeburg v. City of Seattle, 71 Wn. App. 367, 371-72, 859 P.2d 610 (1993) (quoting State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce, 65 Wn. App. 614, 618, 829 P.2d 217 (1992)). As such, "[t]he trial court's credibility findings are not subject to review on appeal." In re Marriage of DewBerry, 115 Wn. App. 351, 362, 62 P.3d 525 (2003). Because we cannot question the trial court's determinations of credibility, AmFam's argument is unavailing. In light of the trial court's credibility determinations, its finding that $2.5 million was a reasonable estimate of Brianna's damages is supported by substantial evidence.

Additionally, AmFam argues that the trial court's finding of an absence of bad faith, collusion, or fraud as between the Garzas and Perry was not supported by substantial evidence and thus does not support the trial court's determination of reasonableness. In so arguing, AmFam presents the evidence that it claims supports a finding of collusion, while ignoring the maxim that substantial evidence review "is 'deferential and requires the court to view the evidence and

19

reasonable inferences in the light most favorable to the party who prevailed' below." State v. Living Essentials, LLC, 8 Wn. App. 2d 1, 14, 436 P.3d 857 (2019) (internal quotation marks omitted) (quoting Mansour v. King County, 131 Wn. App. 255, 262-63, 128 P.3d 1241 (2006)).

When reviewing the evidence in the light most favorable to the Garzas and Perry, there is substantial evidence to support the trial court's finding that the settlement was not the product of collusion. Trudell, the attorney Perry hired based on the advice of AmFam to seek independent counsel, had no affiliation with AmFam, the Garzas, or their respective attorneys. In his declaration, Trudell testified that he interviewed Perry about the collision and the current status of the litigation. Trudell declared that given the information he received from Perry, his conversation with Sullivan, and his own experience litigating TBI cases, he believed that $2.5 million was an accurate assessment of the value of the case. Trudell further declared that he reviewed the proposed covenant judgment and directed the Garzas' attorney to remove a clause that would have awarded loss of consortium damages to Mario. Trudell stated the same to the trial court, and further stated that he would not have simply signed off on whatever number the Garzas' attorney came up with. From this evidence, a reasonable person could conclude that the covenant judgment was not the product of collusion. The trial court did not abuse its discretion in finding the settlement agreement reasonable.

V

The Garzas request an award of attorney fees on appeal pursuant to the

20

No. 83377-4-I/21

Consumer Protection Act[8] (CPA), Insurance Fair Conduct Act[9] (IFCA), and

Olympic Steamship.[10]  These authorities provide for the award of fees to a party

that prevails on a claim for a CPA violation, an IFCA violation, or insurance bad

faith, respectively.  RCW 19.86.090; 48.30.015; Olympic S.S., 117 Wn.2d at 52.

This matter involves no such claims.  Accordingly, we decline to award fees to

the Garzas.

Affirmed.

Dwyer, J.

WE CONCUR:

Bowman, J.          Mann, J.

---

[8] Ch. 19.86 RCW.

[9] Ch. 48.30 RCW.

[10] Olympic S.S. Co. v. Centennial Ins. Co., 117 Wn.2d 37, 811 P.2d 673 (1991).

21